TM:NMA/RJN/AL
F.#2010R00195

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                10 CR 147 (S-4)(SLT)

    - against -

THEODORE PERSICO, JR., <u>et al.</u>,

       Defendants.

- - - - - - - - - - - - - - - -X


THE GOVERNMENT'S OPPOSITION TO THE<br><u>DEFENDANTS' PRETRIAL MOTIONS</u>


                                          LORETTA E. LYNCH
                                          United States Attorney
                                          Eastern District of New York
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201


NICOLE ARGENTIERI
RACHEL NASH
ALLON LIFSHITZ
Assistant United States Attorneys
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

Preliminary Statement .....................................1

Factual Background .......................................2

Argument ...............................................3

     I.   Count One Does Not Violate Theodore Persico,
        Jr.'s Right Against Double Jeopardy ............3

     II.  Racketeering Acts One, Two, Three and Four
        Should Not Be Dismissed for Pre-Indictment
        Delay .........................................20

     III. Michael Persico's Motion to Dismiss Racketeering
        Acts One and Two Is Premature and Should
        Be Denied .....................................31

     IV.  Guerra's Motion for Severance Is Without
        Merit .........................................36

     V.   Suppression of Evidence Is Not Warranted .......43

     VI.  The Defendants Are Not Entitled to a Bill of
        Particulars ...................................52

     VII. The Defendants' Motion for Additional Discovery
        is Moot .......................................59

     VIII.The Defendants' Remaining Requests ............60

Conclusion .............................................62

i

PRELIMINARY STATEMENT

The defendants Theodore Persico, Jr., ("Persico, Jr."),
Michael Persico ("Persico") and Francis Guerra ("Guerra") have
filed pretrial motions,[1] seeking, variously, dismissal of certain
racketeering acts, severance, suppression of certain evidence, a
bill of particulars and additional discovery.

Specifically, Persico, Jr., argues that Count One of
the superseding indictment ("S-4"), which charges the defendants
with racketeering conspiracy in violation of 18 U.S.C. § 1962(d),
should be dismissed because it violates his right against double
jeopardy.  Persico argues that Racketeering Acts One and Two of
Count One, which allege that Persico engaged in the extortionate
extension of credit to and the extortionate collection of credit
from John Doe #1, in violation of 18 U.S.C. § 892(a) and
894(a)(1), should be dismissed for pre-indictment delay and as
insufficiently related to the other racketeering acts or to the
charged enterprise.  Guerra argues that Racketeering Acts Three
and Four should be dismissed for pre-indictment delay.

Persico further argues that the following evidence
should be suppressed: court-ordered interceptions of
conversations at the Lompac prison; Alphonse Persico's and

---

[1]     The defendants' briefs are cited below as "Persico
Br.," "Persico, Jr., Br." and "Guerra Br."  (See Docket Entry
Nos. 395, 399, 400, 401-404).

Carmine Persico's recorded prison calls; and evidence recovered pursuant to the search of Romantique Limousine.

The defendants further make the following discovery demands. Persico, Persico, Jr., and Guerra request, variously, a bill of particulars and the disclosure of the entire NYPD homicide file relating to the murder of Joseph Scopo, the production of certain prison records, the production of Giglio and 3500 material, notice regarding the government's intent to introduce evidence of prior bad acts pursuant to Federal Rule of Evidence 404(b) thirty days in advance of trial, and an exhibit list fifteen days in advance of trial. The government respectfully submits that the defendants' motions should be denied, except that the government has proposed a schedule herein for pretrial disclosures that counsel for Persico, Jr., has advised is acceptable to the defendants.

<u>FACTUAL BACKGROUND</u>

For the purpose of this brief, the government respectfully refers the Court to the description of the factual allegations in this case that was set forth in the Court's recent Order granting the government's motion for an anonymous and partially sequestered jury. (Docket Entry No. 418 at 1-4).

2

<u>ARGUMENT</u>

The government addresses each of the defendants' legal challenges and discovery requests below.

I.   Count One Does Not Violate Theodore Persico, Jr.'s
     <u>Right Against Double Jeopardy</u>

Persico, Jr., moves to dismiss Count One of the superseding indictment on double jeopardy grounds allegedly presented by his prior conviction in <u>United States v. Persico, Jr., et al.</u>, 05 CR 351 (CBA) and the instant charges.  For the foregoing reasons, Persico, Jr.'s argument is meritless and should be denied in its entirety.

A.   <u>Background</u>

1.   <u>Persico Jr.'s 2005 Indictment and Conviction</u>

On May 5, 2005, an indictment was unsealed in the Eastern District of New York charging Persico, Jr., with racketeering (Count One), in violation of 18 U.S.C. § 1962(c), including predicate acts of loansharking and loansharking conspiracy (Count One, Racketeering Act One) and extortion and extortion conspiracy (Count One, Racketeering Act Two), racketeering conspiracy (Count Two), and related substantive counts of loansharking conspiracy and loansharking (Counts Three and Four).  <u>See</u> 05 CR 251 (CBA) (Docket Entry No. 1). Thereafter, on August 25, 2005, a superseding indictment was unsealed (the "'05 S-1 Indictment"), which added two charges

3

against the defendant: witness tampering conspiracy (Count Five) and witness tampering (Count Six). Id. (Docket Entry Nos. 68 and 69). The '05 S-1 Indictment described a pattern of racketeering activity occurring between April 28, 2004 and April 27, 2005. Id.

On September 28, 2005, the defendant appeared before the Honorable Carol B. Amon, United States District Court Judge for the Eastern District of New York, to enter a plea of guilty, pursuant to a plea agreement with the government, to Count One, including Racketeering Acts One and Two. Id. (Docket Entry No. 65). According to the terms of the defendant's plea agreement with the government, in exchange for entering a plea of guilty to Count One of the '05 S-1 Indictment, the government agreed that:

> no further criminal charges will be brought against the defendant for (1) violation of 18 U.S.C. § 922(g) (felon in possession) on May 25, 2004; (2) the extortionate collection of credit charged in Racketeering Act One, Count Three and Count Four; (3) larceny by extortion charged in Racketeering Act Two; and (4) witness tampering charged in Count Fix and Count Six of indictment 05 CR 351 (S-1)(CBA), it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. § 1961 et seq., and at the time of sentence, it will move to dismiss the indictment and the underlying indictment with prejudice.

See Attachment B to Persico, Jr., Br. On March 14, 2006, Chief Judge Amon sentenced the defendant to 42 months' imprisonment to be followed by three years' supervised release and granted the

4

government's motion to dismiss the remaining counts of the indictment and the underlying indictment.  <u>See</u> Transcript of Persico, Jr.'s March 14, 2006 Sentencing at 27-28, attached hereto as Exhibit A.

      2.   <u>Persico's Jr.'s 2010 Indictment</u>

On February 9, 2012, a fourth superseding indictment ("'10 S-4 Indictment" or "S-4") was unsealed in the Eastern District of New York charging the defendant and others in the instant case.  The '10 S-4 Indictment charges the defendant with <u>inter</u> <u>alia</u>, racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  The '10 S-4 Indictment describes a pattern of racketeering activity from January 1987 and June 2011, and identified the following predicate acts against the defendants named below:

| RA# | Description & Date | Defendants |
|---|---|---|
| 1 | Extortionate Extension and Collection of Credit - John Doe #1 (1989 - 1991) | Persico |
| 2 | Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit - John Doe #1 (1990 - 1991) | Persico |
| 3 | Murder/Murder Conspiracy - Joseph Scopo (June 20, 1991 - October 20, 1993) | Guerra Persico Persico, Jr. |
| 4 | Murder/Murder Conspiracy - Michael Devine (January 24, 1992) | Guerra |

| RA# | Description & Date | Defendants |
|---|---|---|
| 5 | Financing Extortionate Extension of Credit/Extortionate Extension and Collection of Credit - John Doe #2 (January 1993 - December 1994) | Persico |
| 6 | Receipt of Stolen Property - Video Games (October 20, 1994 - October 27, 1994) | Guerra |
| 7 | Embezzlement from Employee Benefit Funds (June 2003 to June 2005) | Garofalo |
| 8 | Murder Conspiracy - John Doe #3 (May 25, 2004) | Garofalo Persico, Jr. |
| 9 | Attempted Extortion - John Doe #4 (September 2004 - October 2004) | Garofalo |
| 10 | Witness Tampering - John Doe #5 (November 15, 2004) | Garofalo Persico, Jr. |
| 11 | Extortion Conspiracy/Extortion - Columbus Construction (November 2004 - January 2005) | Garofalo Persico, Jr. |
| 12 | Extortion Conspiracy/Extortion - John Doe #2 (June 2007 to 2009) | Persico Preza |
| 13 | Extortion Conspiracy/Extortion - John Doe #6 (September 2007 to February 2010) | Garofalo Persico Persico, Jr. |
| 14 | Extortion Conspiracy/Extortion - John Doe #7 (2009) | Guerra |
| 15 | Embezzlement from Employee Benefit Funds (April 2009 - February 2010) | Persico, Jr. |

6

| RA# | Description & Date | Defendants |
|---|---|---|
| 16 | Extortionate Extension and Collection of Credit Conspiracy/ Extortionate Extension and Collection of Credit - John Doe #8 and John Doe #9 (May 2009 - February 2010)[2] | Preza Persico Persico, Jr. |
| 17 | Wire Fraud and Commercial Bribery – Testa Corporation (June 2009 - February 2010) | Persico Persico, Jr. Petrizzo |
| 18 | Extortion Conspiracy/Attempted Extortion/Extortion - John Doe #10 and John Doe #11 (September 2009 - February 2010) | Persico |
| 19 | Extortion Conspiracy/Attempted Extortion – Testa Corporation (October 2009 - December 2009) | Persico Petrizzo |
| 20 | Extortion Conspiracy/Extortion - John Doe #12 (May 2010 - August 2010) | Guerra |
| 21 | Conspiracy to Distribute and Distribution of Prescription Drugs (January 2010 - June 2011) | Guerra |
| 22-25 | Wire Fraud - Prescription Drugs (March 24, 2010 - March 8, 2011) | Guerra |

B.   Analysis

1.   The Defendant's 2005 Guilty Plea to Racketeering Did Not Place Him In Jeopardy for Racketeering Conspiracy

It is well settled that substantive racketeering and racketeering conspiracy are different offenses for double

---

[2]   As set forth in the '10 S-4 Indictment, the time period for subpredicate A of Racketeering Act Sixteen is June 8-9, 2009. Also, defendant Preza is not charged in the extortionate collection of credit set forth in subpredicate E.

jeopardy purposes.  See United States v. Sessa, 125 F.3d 68, 71
(2d Cir. 1997); see also United States v. Coonan, 938 F.2d 1553,
1566 (2d Cir. 1991); United States v. Benevento, 836 F.2d 60, 72-
73 (2d Cir. 1987).  Each offense contains an element that the
other does not.  See Blockberger v. United States, 284 U.S. 299,
304 (1932) (setting forth the "same elements" test when
determining whether two crimes constitute the same offense).
Specifically, as the Second Circuit has explained:

> To establish the existence of a RICO
> conspiracy, the government was required to
> prove only the existence of an agreement to
> violate RICO's substantive provisions.  Thus,
> the government necessarily had to establish
> that [the defendant] agreed with his criminal
> associates to form the RICO enterprise
> . . . . , agreed to associate himself with
> that enterprise and agreed to commit two
> predicate acts in furtherance of a pattern of
> racketeering activity in connection with the
> enterprise.  In contrast, [his] conviction on
> the substantive RICO count required proof,
> not of an agreement to violate the
> substantive RICO sections, but actual proof
> that [he] associated himself with the
> enterprise and committed at least two
> predicate acts in connection with the conduct
> of the enterprise.

Sessa, 125 F.3d at 71 (quoting Benevento, 836 F.2d at 73,
brackets and ellipsis in Sessa).  Thus, a conviction for a
substantive RICO offense does not create a double jeopardy bar to
a subsequent prosecution for a RICO conspiracy offense even if
the racketeering enterprise and pattern of racketeering are the
same in both cases.  See id. at 73 (finding it unnecessary to

8

decide whether the pattern of racketeering was the same in successive substantive RICO and RICO conspiracy prosecutions because the two offenses are different as matter of law for double jeopardy purposes).

There is nothing in the transcript of Persico, Jr.'s 2005 guilty plea suggesting that he was "put to trial before the trier of facts," nor any evidence that Persico, Jr., was placed "at risk of a determination of guilt" with respect to the racketeering conspiracy charge that was dismissed pursuant to his plea agreement.  Where Persico, Jr., had agreed to plead guilty only to a substantive RICO charge, Chief Judge Amon could not sua sponte have found him guilty of a RICO conspiracy charge as well. At most, Chief Judge Amon could have rejected the plea agreement and left Persico, Jr., with a choice of going to trial or agreeing to plead guilty to the RICO conspiracy charge as well. But Persico, Jr.'s guilty plea could not constitutionally have resulted in his conviction on any charges other than those to which he had agreed to plead guilty.  See generally Santobello v. New York, 404 U.S. 257 (1971).  Thus, Persico, Jr.'s plea allocution did not and could not have placed him at risk of conviction on a RICO conspiracy charge whether or not his allocution would have satisfied the elements of that charge.

In any case, Chief Judge Amon's inquiry and Persico, Jr.'s allocution focused entirely on the substantive racketeering

9

charge.  Chief Judge Amon correctly advised Persico, Jr., about the elements of a substantive RICO offense but did not address the elements of RICO conspiracy.  See Sessa, 125 F.3d at 71 (discussing differences in elements between the two offenses). Moreover, although Persico, Jr., admitted to participating in the affairs of the enterprise and to being a member of various smaller conspiracies that were charged as racketeering acts, he did not admit to conspiring to participate in the affairs of the enterprise through a pattern of racketeering activity, an essential element of a RICO conspiracy offense.  See id.

 2.   The Defendant's 2005 Conviction Does Not Bar This Prosecution on Double Jeopardy Grounds

Persico, Jr., appears to suggest, however, that his present prosecution is barred if his 2005 guilty plea addressed some of the elements of RICO conspiracy.  Thus, he asserts that "[b]y requiring Persico to allocute to his membership in the enterprise as well as to 'some or all' of the elements of racketeering conspiracy, not simply substantive racketeering, Persico was placed in 'genuine jeopardy' based upon the required admissions during his plea allocution."  See Persico, Jr., Br. at 14.  This argument reveals a fundamental misunderstanding of double jeopardy law.  Under the Blockburger test, two offenses are different as a matter of law for double jeopardy purposes if each offense has any element that is not an element of the other offense.

10

> The Blockburger test examines whether each
> charged offense contains an element not
> contained in the other charged offense. . . .
> If there is an element in each offense that
> is not contained in the other, they are not
> the same offense for purposes of double
> jeopardy, and they can both be prosecuted.

United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999) (citing

United States v. Dixon, 509 U.S. 688, 696 (1993)) (emphasis

added); see also United States v. Basciano, 599 F.3d 184, 197-98

(2d Cir. 2010).  Thus, it is wholly insufficient for Persico,

Jr., to show that his 2005 plea allocution covered some of the

elements of RICO conspiracy.[8]  Rather, he must show, at a

minimum, that he allocuted to all of the elements of RICO

conspiracy and was convicted of that charge.  Plainly, he cannot

satisfy that burden.[9]  Indeed, all of the defendant's citations

---

[8]   The defendant's repeated reliance on United States v.
Dionisio, 503 F.3d 78, 83 (2d Cir. 2007), is misplaced.  There,
the Second Circuit simply found that jeopardy could attach where
"the dismissal entailed a resolution of any factual elements that
went to the merits."  Dionisio, 503 F.3d at 89 (emphasis added).
Dionisio clearly does not stand for the proposition that jeopardy
attaches whenever the defendant allocutes to any element of a
charge that is later dismissed.  Rather, the circuit was
obviously contemplating a situation where a district court
dismisses a charge based upon a finding that an element of that
charge is not (or cannot be) proved.

[9]   Even if he could make such a showing, Persico, Jr.,
would also have to show that the RICO conspiracy offense to which
he pled guilty in 2005 was the same offense in fact as the RICO
conspiracy charged in this case.  See generally United States v.
Korfant, 771 F.2d 660, 662 (2d Cir. 1985) (establishing multi-
factor test to determine whether two conspiracies are the same
for double jeopardy purposes).  However, since substantive RICO
and RICO conspiracy are different offenses as a matter of law,
the Court need not reach this issue.

to the 2005 plea hearing transcript that allegedly indicate the defendant allocuted to RICO conspiracy in fact reference the defendant's allocution to the specific extortion conspiracies set forth in Racketeering Acts One and Two of the '05 S-1 Indictment. See, e.g., Persico, Jr., Br. at 13; Exhibit C to Persico, Jr., Br. at 51-53.

Moreover, Dionisio, a case repeatedly cited by the defendant in support of his motion, dismissed a double jeopardy claim on facts almost identical to those here: the defendant had previously pled guilty to substantive racketeering, pursuant to a plea agreement with the government. Dionisio, 503 F.3d at 80-81. In the plea agreement, the government agreed to dismiss the remaining counts of the superseding indictment and underlying indictment with prejudice. Id. At sentencing, the government moved to dismiss the others counts, which included a racketeering conspiracy count, and the defendant was later indicted for racketeering conspiracy based upon a time period overlapping his previous racketeering conviction. Id. The Second Circuit explicitly found that "no double jeopardy attached as a result of Dionisio's plea agreement and the subsequent dismissal of some counts with prejudice." Id. at 89. In fact, after the Second Circuit rejected Dionisio's double jeopardy claim, Dionisio moved for a petition for rehearing and after that was denied, moved again on double jeopardy grounds based on arguments essentially

12

identical to those made here by the defendant, which were
rejected by the Second Circuit in a summary order, as follows:
"We rejected his argument that allocuting to 'some' elements
relevant to the conspiracy charge placed him at genuine risk of
conviction."  <u>United States v. Dionisio</u>, 415 Fed. Appx. 294 (2d
Cir. 2011).

      Also without merit is Persico, Jr.'s assertion that
"implicit in the '05 plea agreement was the understanding that
the purpose of the plea was to resolve, settle and punish,
Perisco's [sic] racketeering activities for, an absolute minimum,
the specific time period charged in the '05 indictment."
Persico, Jr., Br. at 28.  The defendant argues that Chief Judge
Amon "believed that the plea was intended to cover all RICO
conduct for at least the time period covered by the plea."  <u>Id.</u>
"Otherwise," the defendant argues, "Chief Judge Amon would not
have been so insistent to clarify the parameters of the
enterprise, including its members and Persico's co-conspirators
therein."  <u>Id.</u>  A review of the record clearly demonstrates that
Chief Judge Amon was concerned that the defendant was not
properly allocuting to the charge contained in Count One
(racketeering) because he was not acknowledging his association
with the Colombo crime family, but rather stated at one point:
"So I am the enterprise myself; me and my brother and my cousin
are the enterprise."  <u>See</u> Exhibit C to Persico, Jr., Br. at 35.

13

In response, the Court stated:

> The enterprise charged here is that these
> types of activities were done through the
> Colombo crime family.  They have a charge in
> this indictment, Mr. Persico, [not] a simple
> arrangement between you and your two
> brothers.  And even under your theory, that
> the government thinks that anything – you're
> a member you must be doing something pursuant
> to that membership.  You would still, even if
> you could squeak by on that theory, you would
> have to admit that you were a member of the
> enterprise that they alleged.  I don't
> believe that I can accept the plea to this
> charge here.

Id. at 36.  Notably, the requirement that the defendant

"associated himself with the enterprise" is an element of a RICO

substantive offense that is not an element of a RICO conspiracy

offense.  See Sessa, 125 F.3d at 71.  Thus, Chief Judge Amon was

ensuring only that Persico, Jr.'s allocution was sufficient with

respect to the substantive racketeering count.  As the court

noted during the proceeding, if Persico, Jr., had not been

associated with the specific enterprise charged in the

indictment, he would not have been guilty of the crime to which

he was pleading guilty.  See Exhibit C to Persico, Jr., Br. at

36.

Finally, Persico, Jr., points to nothing in the record

of the 2005 case suggesting that Chief Judge Amon's dismissal of

the racketeering conspiracy count entailed a resolution of any

factual elements that went to the merits of that charge.  That

dismissal occurred solely as a result of the parties' negotiated

plea agreement.  Indeed, the transcript of the sentencing in the 2005 case shows that Chief Judge Amon simply granted without comment the government's motion to dismiss the open counts of the indictment.  See Exhibit A at 28.  Thus, Chief Judge Amon's dismissal did not constitute a judicial determination of any question of fact or law related to that charge.  See Dionisio, 503 F.3d at 89.

> 3.   Should the Court Find that the Defendant's 2005 RICO Conspiracy Count Was Adjudicated on the Merits, Russotti Does Not Bar This Prosecution

The government respectfully submits that even if the Court finds that the defendant was placed in jeopardy for racketeering conspiracy related to his 2005 guilty plea and allocution, the '10 S-4 Indictment is not barred under Russotti and its progeny.  In United States v. Russotti, 717 F.2d 27 (2d Cir. 1983), the Second Circuit held in this context that:

> it is neither the enterprise standing alone nor the pattern of racketeering activity by itself which RICO criminalizes.  Rather, the combination of these two elements is the object of punishment under RICO.  Therefore, in order for the present indictment to give rise to a valid claim of double jeopardy, both the enterprise and the pattern of activity alleged in the [earlier] indictment must be the same as those alleged in the [present] indictment.  If either is different, there is no infirmity under the double jeopardy clause.

Id. at 33.  In assessing whether successive racketeering counts charge distinct patterns of racketeering activity, Russotti

15

adopted a five-factor test:

> (1) the time of the various activities
> charged as parts of separate patterns;
> (2) the identity of the persons involved in
> the activities under each charge; (3) the
> statutory offenses charged as racketeering
> activities in each charge; (4) the nature
> and scope of the activity the government seeks to
> punish under each charge; and (5) the places
> where the corrupt activity took place under
> each charge.

Id. at 33.  Among those factors, "the most significant factor" is

the nature and scope of the charged racketeering activity.  Id.

at 34; see also United States v. Tomero, 473 F. Supp. 2d 609, 615

(S.D.N.Y. 2007) ("A double jeopardy violation occurs only if the

subsequent charge is based on conduct that was part of the same

pattern of racketeering activity that supported the prior RICO

conviction.").

Here, because the enterprises alleged in both

indictments are the same, the only issue is whether Count One in

the '10 S-4 Indictment alleges a pattern of racketeering activity

distinct from the '05 S-1 Indictment.  As demonstrated below, it

plainly does.  Accordingly, double jeopardy does not bar the

instant prosecution.

Most significantly, the specific criminal acts alleged

in the two indictments are entirely different.[10]  There is no

_____

[10]  The defendant's reliance on Basciano is also misplaced.
In Basciano, the Second Circuit found that double jeopardy barred
a successive prosecution for substantive racketeering, where a
review of the totality of predicates pleaded in both indictments

16

overlap at all between the criminal acts that are the predicates
in either count.  Specifically, the '05 S-1 Indictment alleged
the following criminal acts: loansharking and loansharking
conspiracy related to John Does #1 and #2 and extortion
conspiracy and attempted extortion related to Jane Doe, all
between April 2005 and April 2005.  By contrast, the '10 S-4
Indictment alleges the criminal acts set forth supra, including
the murder of, and conspiracy to murder, Joseph Scopo, witness
tampering, extortion and extortion conspiracy related to Colombus
Construction and John Doe #6, and wire fraud and commercial
bribery, all from January 1987 through June 2011.  None of these
predicate acts are based upon charges brought in the '05 S-1
Indictment.  To the contrary, these predicate acts, on their
face, are plainly different patterns of racketeering activity.
That conclusion is only reinforced by decisions in this Circuit
finding discrete patterns of racketeering activity even where
different indictments address the same type of extortion, even of
the same victim, or even where they include some identical
predicate acts between them.  See United States v. Langella, 806

---

included a number of overlapping participants and predicate acts.
United States v. Basciano, 599 F.3d 184, 209-210 (2d Cir. 2010).
For example, in Basciano's earlier prosecution, he and unnamed
others were charged with the murder of Frank Santoro.  Id.
Basciano was then convicted and in Basciano's later prosecution,
his racketeering co-defendants were charged with the murder of
Frank Santoro.  Id.  The defendant cannot point to such an
overlap in the instant prosecution.

F.2d 185, 189 (2d Cir. 1986) (finding "absolutely no overlap of any kind between the patterns of racketeering activity alleged in the two indictments" where one indictment addressed "[e]xtortions involving concrete contracts valued above the $2 million dividing line" and other indictment alleged "[e]xtortions involving contracts of less than that amount"); United States v. Urso, 369 F. Supp. 2d 254, 262 (E.D.N.Y. 2005) ("Moreoever, while the two racketeering acts are common to both indictments, the two indictments charge additional racketeering acts as well, and thus charge different patterns of racketeering activity. Accordingly, under the clear precedent of this Circuit, the Double Jeopardy Clause does not prevent the government from prosecuting under this indictment the allegations described in Racketeering Acts 32 and 43.").

In this regard, Persico, Jr., argues that these distinct criminal acts should not be viewed as distinct because some of them are violations of the same criminal laws. See Persico, Jr., Br. at 21-23. For example, loansharking statutes are charged in each indictment. Persico, Jr.'s analysis is flawed. As Langolla and Russotti make clear, the Russotti factors do not focus woodenly on whether an extortion statute is involved in each indictment, but more importantly on whether the same or different extortions are at issue. Here, the indictments address entirely different extortions, as well as

18

entirely different witness tampering conspiracies, in addition to differing in many other respects as to the predicate acts charged.[11]

There are also other obvious differences between the alleged patterns.  For example, looking to other <u>Russotti</u> factors, (1) the time period covered by the '05 S-1 Indictment was much more compressed than that alleged in the '10 S-4 Indictment, which extends beyond the '05 S-1 Indictment, (2) the other defendants with which Persico, Jr., was charged in the '05 S-1 Indictment are not charged in the '10 S-4 Indictment, (3) the '10 S-4 Indictment alleges criminal acts by Persico, Jr., committed after Persico, Jr.'s arrest and incarceration in connection with the '05 S-1 Indictment.  Accordingly, the racketeering charge to which Persico, Jr., pled guilty is clearly distinct from the racketeering conspiracy charge that he presently faces.

---

[11]   The defendant's bald assertion that these witness tampering conspiracies only "allegedly" involve different victims is difficult to understand.  First of all, the '10 S-1 Indictment did not allege witness tampering conspiracy as a predicate act. However, even if it had, as the government has set forth in multiple filings, including its anonymous jury motion, that the witness tampering conspiracy included in the '10 S-4 Indictment relates to the defendant's efforts to tamper with a witness that was physically assaulted by Garofalo in 2004, while the charges included in the '05 S-1 Indictment related to Persico, Jr.'s efforts to have an extortion victim sign a false affidavit with regard to one of the charged crimes.

Finally, the Court should reject Persico, Jr.'s argument that predicate acts charged in the '10 S-4 Indictment that could have been included in the '05 S-1 Indictment must be dismissed.[12]  See Persico, Jr., Br. at 29.  As the Second Circuit has squarely held, "the Double Jeopardy Clause neither forbids successive prosecutions for different offenses nor requires the government to join all possible charges arising from a course of conduct in a single indictment."  Sessa, 125 F.3d at 73; see also Dixon, 509 U.S. at 704 (rejecting argument that the government is required to "bring its prosecutions together.  It is entirely free to bring them separately, and can win convictions in both.").

For all of these reasons, Persico, Jr.'s double jeopardy motion is without merit and should be denied in its entirety.

## II. Racketeering Acts One, Two, Three and Four Should Not Be Dismissed for Pre-Indictment Delay

Persico moves to dismiss Racketeering Acts One and Two, which allege that he engaged in two loansharking schemes against John Doe #1, based on pre-indictment delay.  In addition, Guerra moves to dismiss Racketeering Acts Three and Four, which allege

---

[12]  Similarly, the government respectfully submits that Persico, Jr.'s unsubstantiated demand that all pre-2005 predicates be dismissed should be ignored, clearly having no basis in the law.

that he murdered Joseph Scopo and Michael Devine, respectively, based on pre-indictment delay.  There is no basis to dismiss any of these racketeering acts, because Persico and Guerra cannot meet their heavy burden of showing that a delay caused them prejudice and was caused by the government in order to obtain a tactical advantage.

    A.   <u>Legal Standard</u>

     The government is under no obligation to file charges as soon as probable cause exists to do so, or even immediately after assembling evidence sufficient to establish a suspect's guilt beyond a reasonable doubt.  <u>United States v. Lovasco</u>, 431 U.S. 783, 791-93 (1977).  Instead, as courts in this district have observed, and as the Supreme Court has held:

> A successful claim for dismissal based on pre- indictment delay must establish that permitting the Government to proceed to trial against the defendant would be so unfair as to violate "fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency."

<u>United States v. Roper</u>, 03 M 361 (CLP), 2003 WL 24017061, at *12 (E.D.N.Y. Nov. 24, 2003) (quoting <u>United States v. Gross</u>, 165 F. Supp. 2d 372, 377–78 (E.D.N.Y. 2001) (quoting <u>Lovasco</u>, 431 U.S. at 790)).

     More specifically, and significantly, a defendant bringing a motion to dismiss based on an alleged pre-indictment

21

delay must show that (1) the delay caused actual and substantial prejudice, and (2) the government intentionally caused the delay in order to obtain a tactical advantage.  United States v. Marion, 404 U.S. 307, 324-26 (1971); United States v. Cornielle, 171 F.3d 748, 751-52 (2d Cir. 1999).  The defendant bears the "heavy burden" of proving both of these elements.  Cornielle, 171 F.3d at 752 (citing United States v. Scarpa, 913 F.2d 993, 1014 (2d Cir. 1990); United States v. Hoo, 825 F.2d 667, 671 (2d Cir. 1987)).

As to the first element, "the proof of prejudice must be definite and not speculative."  United States v. Birney, 686 F.2d 102, 105-06 (2d Cir. 1982).

As to the second element, the Supreme Court has explained that "investigative delay" is perfectly proper, and is "fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused.'"  Lovasco, 431 U.S. at 795-96.  Relatedly, the Supreme Court has held that it does not offend "fundamental conceptions of justice" for a prosecutor to defer an indictment even after he has evidence sufficient to prove a case:

> Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.

Id. at 793-96.  Therefore, a motion to dismiss based on pre-indictment delay will be denied if the delay is attributable "to legitimate considerations, such as the need to obtain evidence and the difficulties that necessarily arise in a complex RICO investigation."  United States v. Hoo, 825 F.2d 667, 671 (2d Cir. 1987).  Indeed, prosecution following a period of investigative delay is permissible even "if [the] defense might have been somewhat prejudiced by the lapse of time."  Lovasco, 431 U.S. at 796.

    B.   Analysis

        1.   Persico Cannot Satisfy Either Element of the Pre-Indictment Delay Test

Persico argues that the government possessed evidence of Racketeering Acts One and Two twenty years ago, and that "[t]his two decade long delay has resulted in significant prejudice against Mr. Persico in that crucial witness testimony necessary to defend the allegations set forth in these racketeering acts is no longer available."  (Persico Br. at 7).

As to the first element of pre-indictment delay -- that the delay caused actual and substantial prejudice -- Persico argues that he is prejudiced because a person who, according to Persico, was the true lender to John Doe #1, has passed away.  (Id. at 8-10).  Although Persico argues that this person would have been a defense witness, he offers no basis for the Court to find that this person would have provided any testimony that

23

would exculpate Persico, let alone what that testimony would be. Moreover, if Persico believes that "the recordings make clear that it was [this person] who set the terms of the loan with" John Doe #1 (id. at 9), then Persico has a viable defense and has not been prejudiced at all, and certainly has not been substantially prejudiced. Because substantial prejudice is a necessary element of the defendant's motion, because the burden is squarely on the defendant, and because "the proof of prejudice must be definite and not speculative," Birney, 686 F.2d at 105-06, the motion to dismiss Racketeering Acts One and Two should be rejected.

As to the second element -- that the government caused a delay in order to obtain a tactical advantage -- Persico argues that "[t]he government can provide no legitimate reason for its failure to bring these charges at a time when a key witness for Mr. Persico . . . was alive[.]" (Persico Br. at 10). This argument is insufficient. As an initial matter, it is not the government's burden to justify a delay. Instead, it is the defendant who must show that the government intentionally caused the delay in order to obtain a tactical advantage. Marion, 404 U.S. at 324-26; Cornielle, 171 F.3d at 752. Because the defendant has not done so, his motion fails.

In addition, the only concrete prejudice that Persico claims is the death of the purported true lender of the

24

loansharking loans to John Doe #1.  In particular, Persico states that this person passed away in 2001.  (Id. at 9).  Persico does not assert, however, that the government somehow knew that this person would die if it delayed bringing charges, and therefore Persico does not -- and cannot -- argue that the government delayed bringing charges in order to obtain a tactical advantage by this person's death.

In support of his motion, Persico cites United States v. Gross, 165 F. Supp. 2d 372 (E.D.N.Y. 2001), in which bank-fraud charges were dismissed because of pre-indictment delay.  Persico Br. at 8.  However, Gross is distinguishable from the present case in four critical respects.  First, the defendants in Gross alleged a far greater degree of prejudice than does Persico.  In particular, the defendants in Gross argued that during the period of delay, "documents and other evidence were lost, business in possession of critical documents collapsed and witnesses died."  165 F. Supp. 2d at 380.  In the present case, by contrast, Persico argues only that one witness has died.  This distinction is significant in light of the requirement that Persico show not merely prejudice, but "substantial" prejudice. Cornielle, 171 F.3d at 752.

Second, the defendants in Gross established that "internal and external banking regulations would have prevented [the victim] from keeping its records in this manner [i.e.,

25

without the missing documents] in the regular course of business, Gross at 382, suggesting the possibility of impropriety or negligence in maintaining relevant evidence.  In the present case, by contrast, there can be no suggestion that the prejudice asserted -- the death of a potential witness -- was caused by any impropriety or negligence.

Third, the prejudice in Gross was relatively concrete. The defendants in Gross put forth evidence of 42 documents that would be expected to exist in files relating to the transactions at issue, explained the significance of each one, established that they had in fact existed, and demonstrated that the documents were "critical to Defendants' case."  Gross at 381-82. In the present case, by contrast, Persico has merely assumed the purported true lender would testify to his benefit.  This distinction is significant in light of the requirement that "the proof of prejudice must be definite and not speculative."  United States v. Birney, 686 F.2d 102, 105-06 (2d Cir. 1982).

Fourth, in addition to alleging that documents were missing, the defendants in Gross alleged that three witnesses were missing.  Gross at 383.  In the present case, by contrast, there is only one witness whose unavailability is alleged to cause prejudice.  Persico Br. at 8-10.  Again, this is significant because Persico is required to show "substantial" prejudice.  Cornielle, 171 F.3d at 752.  Notably, in Gross itself

26

the court explained that it "cannot conclude that the unavailable testimony of these [three] witnesses alone would result in prejudice to the Defendants[,]" but only that the missing witnesses "when considered in combination with other missing evidence" supported a finding of pre-indictment delay).  <u>Gross</u> at 383.  Because Persico alleges that only one potential witness is no longer available, he cannot show substantial prejudice.[13]

Because Persico has failed to show that any delay in charging him with Racketeering Acts One and Two has caused him actual and substantial prejudice, and because he has failed to show that the government intentionally caused a delay in order to obtain a tactical advantage, his motion to dismiss Racketeering Acts One and Two is without merit.  <u>Lovasco</u>, 431 U.S. at 793-96; <u>Hoo</u>, 825 F.2d at 671.

---

[13]    Persico also relies on <u>United States v. Morrison</u>, 518 F. Supp. 917 (S.D.N.Y. 1981).  Persico Br. at 8.  <u>Morrison</u> is inapposite because it was decided in 1981 and applied legal standards that today are clearly incorrect.  First, <u>Morrison</u> relied on a finding of "actual prejudice."  <u>Morrison</u> at 919. This is wrong because a defendant must show not merely actual prejudice but "substantial" prejudice.  <u>Cornielle</u>, 171 F.3d at 752.  Second, <u>Morrison</u> found that the government had committed "gross negligence" in allowing evidence to be destroyed. <u>Morrison</u> at 919.  This is wrong because a defendant must show not merely negligence but rather that "the delay was an <u>intentional</u> device to gain [a] tactical advantage over the accused." <u>Cornielle</u>, 171 F.3d at 752 (citing <u>Marion</u>, 404 U.S. at 324) (emphasis added).  Third, <u>Morrison</u> found that the government's conduct deprived the defendant of the opportunity "to interview witnesses who <u>very possibly</u> ha[d] exculpatory testimony to offer."  <u>Morrison</u> at 919.  This is wrong because "the proof of prejudice must be definite and not speculative."  <u>United States v. Birney</u>, 686 F.2d 102, 105-06 (2d Cir. 1982).

    2.   Guerra Cannot Satisfy Either Element of the
       Pre-Indictment Delay Test

      a.   The Murder of Joseph Scopo

Guerra argues that Racketeering Act Three, which alleges the 1993 murder of Joseph Scopo, should be dismissed because the government was told by three cooperating witnesses no later than 1999 that Guerra was involved in the murder, and since then at least two eyewitnesses have died.  Guerra Br. at 2-3; McMahon Aff. ¶¶ 4-9.  This argument does not satisfy either element of the pre-indictment delay test.

First, Guerra cannot show prejudice, let alone substantial prejudice.  Although he asserts that two eyewitnesses have died, he has not identified those eyewitnesses or explained how their deaths have affected his ability to defend himself.  Because "the proof of prejudice must be definite and not speculative," Birney, 686 F.2d at 105-06, Guerra cannot satisfy this element, and his motion should be rejected.

Second, Guerra cannot show that the government caused a delay in order to obtain a tactical advantage.  As an initial matter, Guerra has not alleged, and cannot allege, that the government delayed bringing this charge because it somehow knew that eyewitnesses would die.  Moreover, the timing of the charge was determined by the need for the government to continue its investigation.  In particular, the evidence against Guerra will include the testimony of a cooperating witness who only recently

became available.  Therefore, any delay in charging Guerra with the Scopo murder was based on perfectly proper investigative considerations, as distinct from an attempt to gain a tactical advantage, and Guerra cannot satisfy the second element. Lovasco, 431 U.S. at 793-96; Hoo, 825 F.2d at 671.  For all these reasons, Guerra's motion to dismiss Racketeering Act Three should be denied.

b.   The Murder of Michael Devine

Guerra argues that Racketeering Act Four, which alleges the 1992 murder of Michael Devine, should be dismissed because the government was advised by a source in or before 1995 that Guerra was involved in the Devine murder, potential witnesses have since died or disappeared, recollections have dimmed, and the defense is having difficulty locating witnesses to the murder.  Guerra Br. At 2-3; McMahon Aff. ¶¶ 10-14.  Like the argument regarding the Scopo murder, this argument does not satisfy either element of the pre-indictment delay test.

First, Guerra cannot show substantial prejudice. Although he asserts conclusorily that potential witnesses have died or disappeared, he has not identified any such witnesses or explained how they would have helped him defend himself. Therefore, as with the motion to dismiss the Scopo murder, he has not shown actual prejudice, let alone substantial prejudice. Because "the proof of prejudice must be definite and not

speculative," Birney, 686 F.2d at 105-06, the motion should be rejected.

Second, Guerra cannot show that the government caused a delay with respect to the Devine murder in order to obtain a tactical advantage.  Again, the evidence against Guerra will include the testimony of a cooperating witness who only recently became available.  Therefore, any delay in charging Guerra with the Scopo murder was based on perfectly proper investigative considerations, as distinct from an attempt to gain a tactical advantage.  Lovasco, 431 U.S. at 793-96; Hoo, 825 F.2d at 671.

\*     \*     \*

Because Persico and Guerra cannot satisfy either element of the pre-indictment delay test, their motions should be denied, as such motions routinely are.  See, e.g., United States v. Messina, 11 CR 31 (KAM), 2012 WL 463973, at *4-6 (E.D.N.Y. Feb. 13, 2012) (rejecting motion to dismiss 18-year-old charge because defendant did not show actual or substantial prejudice or that the government intentionally delayed filing indictment in order to obtain a tactical advantage); United States v. Carbonaro, 02 CR 743 (RCC), 2004 WL 2222145 (S.D.N.Y. Sep. 30, 2004) (rejecting motion to dismiss 14-year-old charge because even if defendant had shown actual prejudice, he supplied no evidence that government's conduct was for an improper purpose); United States v. Gotti, 02 CR 743 (RCC), 2004 WL 32858 (S.D.N.Y.

30

Jan. 6, 2004) (rejecting motion to dismiss because defendant failed to show actual prejudice or that government acted intentionally to gain a tactical advantage).

III. Michael Persico's Motion to Dismiss Racketeering Acts One and Two Is Premature and Should Be Denied

Although the language of S-4 is legally sufficient, Persico moves to dismiss Racketeering Acts One and Two of Count One on the ground that they are not sufficiently related to the criminal enterprise - the Colombo family - or to the alleged pattern of racketeering activity.  Persico Br. at 12-13.  Because "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits," Persico's application to dismiss these Racketeering Acts pretrial should be denied. Costello v. United States, 350 U.S. 359, 363 (1956); see also United States v. Blitz, 533 F.2d 1329, 1344 (2d Cir. 1976).

A.   The Indictment Is Legally Sufficient

RICO indictments, like all indictments, are governed by Rule 7(c)(1) of the Federal Rules of Criminal Procedure.  United States v. Fruchter, 104 F. Supp. 2d 289, 296 (S.D.N.Y. 2000). Rule 7(c)(1) provides that an indictment need only contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  An indictment satisfies Rule 7(c)(1) if it contains the elements of an offense, notice of the charges against which the defendant must defend and

31

information sufficient to protect the defendant against double jeopardy.  Hamling v. United States, 418 U.S. 87, 117 (1974); Fruchter, 104 F. Supp. 2d at 296.  Generally, an indictment that tracks the statutory language defining an offense satisfies these requirements, and is therefore sufficiently specific to withstand a motion to dismiss.  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1990); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992); see also United States v. Torres, 94 CR 466 (JFK), 1995 WL 261531, at *2 (S.D.N.Y. May 4, 1995) (denying motion to dismiss RICO charges for failure to allege pattern because enterprise was defined and the indictment tracked language of 18 U.S.C. § 1962(c) and (d)).

Because at the pretrial stage the government need only satisfy Rule 7(c)(1) by providing a "plain, concise and definite written statement," and may do so by simply tracking the language of the statute, the indictment certainly satisfies the requirements of the rule.  The superseding indictment here provides that the defendant conspired "to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth [in the indictment]."  (S-4 ¶ 16 (emphasis added)).  It

32

further provides that "[e]ach defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise." (Id.). The indictment then sets forth 10 racketeering acts between 1989 and 2010 that the defendant agreed he and/or his co-conspirators would commit in furtherance of the enterprise, i.e., the Colombo Organized Crime family of La Cosa Nostra, and alleges that the last Racketeering Act involving Persico, Racketeering Act 19, occurred within ten years of other Racketeering Acts involving Persico. (Id. ¶¶ 44-48; 74-78). The '10 S-4 Indictment thus alleges a proper "pattern" of racketeering activity. See 18 U.S.C. § 1961(5).

> B.   It Is Premature to Assess the Sufficiency of the Government's Evidence

Notwithstanding that '10 S-4 tracks the language of the statute, Persico argues that Racketeering Acts One and Two should be dismissed because there is "no indication that Mr. Persico was able to commit the predicate offenses solely by virtue of his position in the enterprise or that the Geller loans were in any way related to the activities of the enterprise." Persico Br. at 12 (internal quotations and citations omitted). As set forth above, that is not the case as the indictment clearly alleges that Persico committed or agreed these acts would be committed as part of the racketeering conspiracy. Thus, Persico's challenge

is essentially a factual one, which is premature until evidence has been presented at trial.

"Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."  United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998).  Put another way, the government is entitled to marshal and present its evidence at trial, and if a defendant wishes to challenge the sufficiency of the evidence then he must wait to file a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  United States v. Cassese, 273 F. Supp. 2d 481, 484-85 (S.D.N.Y. 2003); Fruchter, 104 F. Supp. 2d at 298; see also United States v. Gambino, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992) (noting that "a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary insufficiency").

Here, the government has presented only a limited proffer of the evidence in the case in submissions filed in connection with its motions for permanent orders of detention and for an anonymous jury and in opposition to defendants' various pretrial motions submitted to date.  A full presentation of the government's evidence will occur at trial and, at that time, Persico will have the opportunity to challenge the sufficiency of

34

that evidence.  Alfonso, 143 F.3d at 777.  In advance of trial, the Court's review of the superseding indictment should relate only to the allegations as charged.

In Gambino, 809 F. Supp. 1061, for example, the defendant moved to dismiss racketeering acts on the ground that "the time period separating these acts illustrate[d] that they were random, isolated acts that d[id] not constitute a pattern of racketeering."  Gambino, 809 F. Supp. at 1079.  The court noted that a defendant could not challenge a facially valid indictment prior to trial on the basis of insufficient evidence.  Id.  The court further found that the indictment clearly alleged that the defendant participated in a pattern of racketeering activity and alleged that at least two acts by him constituted that pattern. Id. at 1080.  The court concluded that the indictment was thus facially valid, and denied the motion with leave to renew at the close of the government's evidence.  Id.; see also United States v. Urso, 369 F. Supp. 2d 254, 260 (E.D.N.Y. 2005) (denying as premature motion to dismiss where defendant argued that predicate acts in which he was named were not meaningfully related and therefore did not satisfy pattern requirement); United States v. Giovannelli, 01 CR 749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004) (holding that RICO charges, including four predicate acts "alleged to have been performed in furtherance of an ongoing criminal enterprise, the Genovese Organized Crime Family, whose

very business is promoting racketeering activity," were "more than enough" to adequately allege pattern).[14]

In sum, the defendant's argument presents a factual issue that may be appropriately raised at trial, but must be rejected in a pretrial motion to dismiss.  <u>Alfonso</u>, 143 F.3d at 776; <u>Giovannelli</u>, 2004 WL 48869, at *3.

## IV.  Guerra's Motion for Severance Is Without Merit

Guerra moves pursuant to Rule 14 for severance from co-defendants Persico and Persico, Jr. based upon his erroneous conclusion that audio recordings of a cooperating witness would be admissible at a trial against these co-defendants, but not against Guerra if he is tried separately from them.  For the reasons set forth below, his motion is without merit and should be denied.

### A.  Applicable Law

There is a preference in the federal system that defendants indicted together be tried together.  <u>United States v. Miller</u>, 116 F.3d 641, 679 (2d Cir. 1997).  Federal Rule of Criminal Procedure 14 allows severance only upon a showing of

---

[14]   Indeed, Persico has not cited any cases in which the indictment, or racketeering acts within the indictment, were dismissed prior to trial as insufficiently related to one another and/or the enterprise.  Rather, in the cases cited by Persico - <u>United States v.  Minicone</u>, 960 F.2d 1099, 1106 (2d Cir. 1992) and <u>United States v. Robilotto</u>, 828 F.2d 940, 947-48 (2d Cir. 1987) - the Second Circuit determined that the evidence <u>at trial</u> was sufficient to establish that the racketeering acts were related to the enterprise.

"prejudice" to the defendant from a joint trial of charges or defendants.  Rule 14 provides, in relevant part:

> If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Under Rule 14, severance is only warranted in the narrow set of circumstances set forth in Zafiro v. United States, which held that a severance should only be granted where a joint trial would "compromise a specific trial right" of a defendant or "prevent the jury from making a reliable judgment about guilt or innocence."  506 U.S. 534, 538-39 (1993); see also United States v. Bellomo, 263 F. Supp. 2d 561, 578 (E.D.N.Y. 2003); United States v. Yousef, 327 F.3d 56, 150 (2d Cir. 2003).  Accordingly, "[a] defendant seeking a Rule 14 severance bears the heavy burden of showing that he will be substantially prejudiced by a joint trial."  United States v. Albunio, 1992 WL 281037, at *3 (E.D.N.Y. Sept. 9, 1992); United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) ("Given the balance struck by Rule 8, which authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice.") (internal citations and quotation marks omitted).  "Substantial prejudice" is "prejudice so egregious that a defendant's rights cannot be adequately protected by admonitory instructions to a

37

jury and the denial of a severance would deprive him of a fair trial." Albunio, 1992 WL 281037, at *3. The decision to grant severance is committed to the discretion of the trial court. See Zafiro, 506 U.S. at 541.

Judicial economy and the interests of justice compel a joint trial. See United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993) (observing that "[j]udicial economy is the primary factor to be considered by the district court in the exercise" of its discretion over severance). These policies acknowledge an inevitable tolerance of some prejudice to co-defendants, which is deemed outweighed by the avoidance of duplicate trials. See id. ("The risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits."). Risk of inconsistent verdicts resulting from separate trials, as well as the advantageous position that subsequently tried defendants obtain from familiarity with the prosecution's strategy is averted through single multi-defendant trials. See Richardson v. Marsh, 481 U.S. 200, 209-10 (1987). Joint trials also "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." United States v. Rucker, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999).

B.    <u>Analysis</u>

Guerra cannot satisfy his burden pursuant to Rule 14 because his motion for severance is based on the erroneous premise that recordings made by a cooperating witness ("CW1") of conversations with Anthony Russo, prior to the time Anthony Russo began cooperating with the government, would be inadmissible at a trial against Guerra alone.  However, for the reasons set forth below, these statements are admissible against the defendants, including Guerra, regardless of whether Guerra is tried separately or jointly from Persico, Jr., and Persico.  Thus, Guerra will not suffer any prejudice whatsoever in a joint trial.

1.    <u>Russo's Recorded Statements</u>

Prior to the time he began cooperating with the government, Anthony Russo was consensually recorded by CW1, an associate of the Colombo family and a member of Russo's crew. During these conversations, Russo discussed his involvement and the involvement of others in the criminal affairs of the Colombo family, and in particular, implicated himself and others, including Guerra, in the murder of Joseph Scopo.  During these recorded conversations, Russo advised CW1 regarding the positions of various individuals in the Colombo family, the criminal activities in which he and other members and associates engaged, the directives and protocols he and others were required to follow by virtue of their involvement in the Colombo family, and

39

his concerns about the possibility that others would cooperate against him and his coconspirators.

For example, with respect to the murder of Joseph Scopo, Russo explained to CW1 that on the night of the murder, he had been the driver, John Pappa was the shooter and "BF" [Guerra] was the driver of a crash car.  Not only did Russo describe his and Guerra's role in the murder, he explained to CW1 his belief that his participation was sufficient to increase his rank in the family and make him a captain (or "skipper").  Thus, his statements were not idle comments but furthered the conspiracy by describing for CW1, who was a trusted longtime associate in the Colombo family, the manner in which individuals participating in the conspiracy can move up the hierarchy of the Colombo crime family, among other things.

> 2.   Russo's Statements Are Admissible Co-Conspirator Statements

Guerra argues that these statements are inadmissible against him, alleging that, as prior consistent statements, they constitute hearsay, which would only be admissible to rebut a claim of recent fabrication.  See Fed. R. Evid. 801(d)(1)(B).  He claims that it will be only through the impeachment efforts of counsel for Persico, Jr., and Persico that Russo's prior statements regarding the Scopo murder will be introduced at trial.  This is not correct.  Russo's recorded statements are admissible at trial regardless of whether Persico, Jr., and

Persico use Russo's prior recorded statements about the Scopo murder to impeach Russo.

Russo's recorded statements are not hearsay because they fall squarely within the definition of co-conspirator statements, made during and in furtherance of the conspiracy, that are admissible when introduced against other members of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).  His statements were made in order to keep CW1 and other co-conspirators apprised of the rules, structure and criminal activities of the Colombo family.  See, e.g., United States v. Rastelli, 870 F.2d 822, 837 (2d Cir. 1989) (holding that co-conspirator statements made to reassure, maintain trust and cohesiveness, and/or to provide information about the participants in and the status or ends of the conspiracy, are made in furtherance of the conspiracy). Thus, regardless of whether counsel for Persico, Jr., and Persico used Russo's prior recorded statements regarding the Scopo murder to impeach Russo, the statements will be admissible in the government's case against Guerra.

> 3.   Russo's Statements Would Be Admissible To Rebut
>      Guerra's Impeachment Efforts

Moreover, in light of Guerra's arguments in opposition to the government's application for a permanent order of detention, in which Guerra sought to discredit Russo's claim that Guerra participated in the Scopo murder, it is unlikely that Guerra will mount a defense without attacking Russo's testimony

regarding Guerra's involvement in the Scopo murder or, at the very least, attacking Russo's general credibility.  In either of these circumstances, Russo's prior consistent statements would be admissible to rebut the claim that Russo fabricated his testimony after cooperating and/or to rebut more general attacks on Russo's credibility.  Fed. R. Evid. 801(d)(1)(B); United States v. Rivera, 60 Fed. Appx. 854, 860 (2d Cir. 2003) (prior consistent statement of a witness is admissible if the opposing party suggests the witness's testimony is false or the product of improper influence or motive and the prior consistent statement was made prior to the alleged motive to falsify); see also United States v. Castillo, 14 F.3d 802, 806 (2d Cir. 1994) (holding that even consistent statements made after a motive to fabricate arises are admissible to rebut attacks on the witness's credibility).

C.   Conclusion

For these reasons, Russo's prior recorded statements would be admissible regardless of whether Guerra is tried alone or jointly with Persico, Jr., and Persico.  Therefore, Guerra has failed to demonstrate that he will suffer any undue prejudice at a joint trial and his motion should be denied.

V.   Suppression of Evidence Is Not Warranted

Persico moves to suppress (1) court-authorized wiretap recordings of himself and others meeting in Lompoc prison, (2) evidence obtained during the search of Romantique Limousine, and (3) prison telephone recordings of Alphonse and Carmine Persico.

Persico claims that the court-authorized Lompoc prison recordings should be suppressed based upon the government's alleged (1) lack of probable cause in obtaining the wiretap; (2) failure to show necessity in obtaining the wiretap; and (3) undue delay in seeking a disclosure order.  The government does not intend to offer these materials during its case-in-chief; therefore, the defendant's motion is moot and should be dismissed without prejudice.

Persico also moves to suppress evidence obtained during a search of Romantique Limousine in the 1990s based upon the government's failure to provide the underlying search warrant and affidavit.  The government has since provided the defendant with a copy of the search warrant and affidavit related to the 1991 search of the Offices of Romantique Limousines located in Brooklyn, New York.  Accordingly, the basis for the defendant's motion for suppression is moot and the defendant's motion should be dismissed.

43

Persico also moves to suppress the prison telephone recordings of Alphonse Persico because they were obtained without a warrant.  More specifically, Persico moves to suppress recordings of telephone calls placed by his brother, Alphonse Persico ("A. Persico"), in and between October 1991 and January 1992, while A. Persico was incarcerated at the Federal Correctional Institution in Milan, Michigan ("FCI Milan"). Persico Br. at 30-38.  Persico argues that these recordings should be suppressed because they were obtained without a warrant, in violation of Title III and the United States Constitution.  (Id. at 30-31).  This argument has no merit, and the motion should be rejected.[15]

A.    Legal Standard

Title III generally prohibits the intentional interception of wire communications, such as telephone calls, without court-ordered authorization, and an unlawfully intercepted telephone call may not be offered as evidence in a trial.  United States v. Workman, 80 F.3d 688, 692 (2d Cir. 1996) (citing 18 U.S.C. §§ 2510-22).

---

[15]    In addition, Persico moves to suppress recordings of telephone calls placed by his father, Carmine Persico ("C. Persico"), in February 1991, while C. Persico was incarcerated. Persico Br. at 30.  The government does not intend to introduce the contents of those recordings, though it reserves the right to introduce the fact that the calls were made.

There are, however, exceptions to this prohibition, including, significantly, an exception based on consent:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).  Consent may be either express or implied.  United States v. Amen, 831 F.2d 373, 378 (2d Cir. 1987).

The Second Circuit has "long recognized that, under certain circumstances, prisoners are deemed to have given consent for purposes of Title III to the interception of their calls on institutional telephones."  Workman at 693 (citing United States v. Willoughby, 860 F.2d 15, 19-20 (2d Cir. 1988)); Amen, 831 F.2d at 378-79).  In particular, the Second Circuit has "held that inmates impliedly consent to have their telephone conversations monitored where they have received notice of the surveillance and nevertheless use the prison telephones."  Workman at 693 (citing Amen at 378-79).

B.   Analysis

In this case, it is clear that A. Persico consented to the recording of his telephone calls.  First, the Code of Federal Regulations in effect at the relevant time provided that:

> The Warden shall establish procedures that enable monitoring of telephone conversations on any telephone located within the

45

> institution, said monitoring to be done to
> preserve the security and orderly management
> of the institution and to protect the public.
> The Warden must provide notice to the inmate
> of the potential for monitoring.

C.F.R. § 540.101 (revised as of July 1, 1991) (attached as

Exhibit B).  This provision provided notice to the public, and

therefore notice to prisoners, that prison calls were monitored,

and it supports a finding of consent.  Workman, 80 F.3d at 693;

Amen, 831 F.2d at 379.

Second, the Bureau of Prisons has advised that during

the relevant period, signs notifying prisoners that their calls

were monitored were placed near telephones used by prisoners at

FCI Milan.  Those signs provided as follows:

NOTICE

> Pursuant to Bureau of Prisons Inmate telephone
> regulations:
>
> All conversations on this telephone are subject to
> monitoring.  Your use of this telephone constitutes
> consent to this monitoring.  You must contact your unit
> team to request an unmonitored attorney call.
> (Emphasis in original.)

Therefore, it is clear that A. Persico had actual notice that his

calls were monitored, and that he consented to such monitoring by

placing calls.  Workman, 80 F.3d at 693; Willoughby, 860 F.2d at

20; Amen, 831 F.2d at 379.

Third, the Bureau of Prisons has advised that during

the relevant period, inmates in FCI Milan were advised in

admission and orientation handbooks and during admission and

46

orientation sessions that their calls were monitored.  These facts further support a finding of consent.  Workman, 80 F.3d at 693; Willoughby, 860 F.2d at 20; Amen, 831 F.2d at 379.

In light of these facts, A. Persico consented to the recording of his telephone calls, such that their recording and introduction into evidence in no way violates Title III.

Persico appears to argue that the consent exception does not apply because the monitoring in this case may have exceeded the scope of the ordinary course of the duties of an investigative or law enforcement officer.  Persico Br. at 32 ("the real inquiry here is what does the 'ordinary course of' prison 'business' entail?").  This argument is both legally irrelevant and factually incorrect.

The argument is legally irrelevant because when the consent exception applies, there is no reason to consider whether monitoring was within the scope of the ordinary course of the duties of an investigative or law enforcement officer.  The statutory provision giving rise to the consent exception does not refer in any way to that scope.  Instead, as noted above, it simply provides that:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception.

47

18 U.S.C. § 2511(2)(c).  To consider the scope of the duties of any investigative or law enforcement officers would therefore contradict the plain text of the consent exception.

In addition, when the Second Circuit considers whether the consent exception applies, it makes no inquiry whatsoever into whether monitoring was within the scope of the ordinary course of the duties of an investigative or law enforcement officer.  See, e.g., Workman, 80 F.3d at 692-94; Willoughby, 860 F.2d at 19-20; Amen, 831 F.2d at 378-79.  Neither should this Court.

Persico suggests otherwise by conflating case law governing the consent exception and case law governing a separate, unrelated exception.  In addition to the consent exception, Title III provides an exception for "any telephone . . . being used . . . by an investigative or law enforcement officer in the ordinary course of his duties[.]"  18 U.S.C. § 2510(5)(a)(ii).  The primary case cited by Persico regarding the scope of the ordinary course of prison business interprets Section 2510(5)(a)(ii), not the consent exception set forth in Section 2511(2)(c).  United States v. Green, 842 F. Supp. 68, 72-74 (W.D.N.Y. 1994).  In fact, and contrary to Persico's suggestion, Green included a separate analysis of the consent exception, and found that the consent exception applied even though the ordinary-course exception did not.  Id. at 71-72.

48

In addition, the Second Circuit's opinion in Amen, which Persico also cites in support of his ordinary-course argument, makes clear that the ordinary-course argument is irrelevant if consent is established. Persico Br. at 32. In Amen, the applicable C.F.R. provisions stated that the purpose of monitoring telephone calls was to preserve security and order in the prison and to protect the public. 831 F.2d at 379 n.2. However, in determining whether prison calls were properly admitted into evidence, the Circuit did not in any way consider the provisions of Section 2510(5)(a)(ii), and instead relied only on facts supporting a finding of consent to determine that the calls at issue were properly admitted. Id. at 379. In fact, in Amen, the Circuit explicitly declined to consider the ordinary-course exception "except to express [its] reservation that the prison officials monitored the calls in the ordinary course of their duties." Id. at 378 n.1. Because the Circuit affirmed the introduction of the prison calls into evidence despite this "reservation," it is clear that if the consent exception applies, the ordinary-course exception is irrelevant.[16]

In addition, should the Court find it appropriate to consider whether the ordinary-course exception applies, the

---

[16]    Similarly, although the defendant cites Willoughby in support of his motion (Persico Br. at 33), in that case the Second Circuit also based its opinion on whether there was consent, and did not rely in any way on Section 2510(5)(a)(ii). 860 F.2d at 19-20.

49

government respectfully submits that it does. <u>Green</u>, a rare case in which a district court found otherwise, is easily distinguishable. In <u>Green</u>, the defendant had been treated differently from other inmates:

> [I]nmate calls were ordinarily recorded on a reel-to-reel tape. Prison officials could listen in on the calls as they were being recorded or at the end of the day. In order to keep the tape-recording, it was necessary to either tape the conversation simultaneously onto a cassette tape or to copy the call from the reel-to-reel before it was taped over.
>
> All of [the defendant] Green's phone calls were recorded on audio cassettes from the day he entered the prison, upon the suggestion of [Lieutenant] Tasker's fellow officer. A week later, Tasker requested and was granted permission to continue this practice, apparently indefinitely, in an informal meeting with Superintendent Mann. Despite the fact that Tasker allegedly overheard plans to conspire to commit murder, kidnapping, and large illegal drug sales, no prison official ever moved to cut off Green's telephone privileges or warn him that his conversations were being recorded and could be used against him. Instead, Tasker continued for more than one year to record Green's conversations and send them to the Buffalo Police and the F.B.I. for use in an ongoing criminal investigation.

842 F. Supp. at 73. In the present case, by contrast, there is no basis to believe that A. Persico was subject to different monitoring practices from other inmates, or that he was being investigated by prison officials.

Finally, Persico argues that admission of recordings from FCI Milan would violate his or A. Persico's constitutional rights.  Persico Br. at 36-37.  However, the Second Circuit has "squarely rejected" the argument that a non-inmate's rights under the Fourth Amendment are violated when his conversations with an inmate are recorded.  <u>Workman</u>, 80 F.3d at 694 (citing <u>Willoughby</u>, 860 F.2d at 22).  In addition, "[a]s the Supreme Court construes the Fourth Amendment," and as the Second Circuit has applied it, "prison inmates have no reasonable expectation of privacy," and therefore no Fourth Amendment violation arises from recording their telephone calls.  <u>Amen</u>, 831 F.2d at 379 (citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 527-28 (1984); <u>United States v. Cohen</u>, 796 F.2d 20, 22-23 (2d Cir. 1986)).

*      *      *

For the foregoing reasons, it is clear that recording A. Persico's prison calls was not in violation of the Fourth Amendment.  Therefore, Persico's motion to suppress the recordings from FCI Milan should be denied.

VI.  The Defendants Are Not Entitled to a Bill of
     Particulars

A.  <u>Legal Standard</u>

As set forth above, under the Federal Rules of Criminal Procedure, an indictment need only set forth a "plain, concise and definite written statement of the essential facts constituting the offense."  Fed. R. Crim. P. 7(c).  Additional

51

details, in the form of a bill of particulars, see Fed. R. Crim.
P. 7(f), are not appropriate unless the indictment is too vague
to inform the defendant of the nature of the charges to allow the
preparation of a defense, avoid unfair surprise, and preclude
double jeopardy. United States v. GAF Corp., 928 F.2d 1253, 1260
(2d Cir. 1991); United States v. Torres, 901 F.2d 205, 234 (2d
Cir. 1990) (bill of particulars required "only where the charges
of the indictment are so general that they do not advise the
defendant of the specific acts of which he is accused") (internal
citations and quotation marks omitted).

        In order to obtain a bill of particulars, the defendant
must show why he needs each of the particulars demanded and
explain how the denial of each one will prevent him from
identifying the specific crimes with which he is charged.  The
ultimate test of the appropriateness of a bill of particulars is
whether the information is necessary to understand the charges,
not whether it is helpful to the defendant.  See United States v.
Cheng, 94 CR 692 (JFK), 1995 WL 168905, at *5 (S.D.N.Y. Apr. 7,
1995); United States v. Weinberg, 656 F. Supp. 1020, 1029
(E.D.N.Y. 1987).

        A defendant cannot use a bill of particulars as a
general investigative tool or a pretrial discovery device.  See
United States v. Pimentel, 99 CR 1104 (SJ), 2001 WL 185053, at *4
(E.D.N.Y. Jan. 22, 2001); United States v. Leonard, 817 F. Supp.

52

286, 301 (E.D.N.Y. 1992).  Rule 7(f) does not permit the
disclosure of the evidentiary details of the government's case,
see Torres, 901 F.2d at 234; United States v. Gottlieb, 493 F.2d
987, 994 (2d Cir. 1974), the government's method of proving the
manner in which the crimes charged in the indictment were
committed, see Gottlieb, 493 F.2d at 994; United States v.
Andrews, 381 F.2d 377, 378 (2d Cir. 1967), or the government's
legal theory, see United States v. Feliciano, 01 CR 448 (NRB),
2002 WL 575662, at *2 (S.D.N.Y. Apr. 16, 2002).

        Moreover, a defendant is not entitled to discover,
through a bill of particulars, the exact times and places at
which the crime occurred or the identities of the documents and
witnesses that will establish the crime charged, see United
States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975); United
States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975).  Nor is a
defendant entitled to detailed evidence as to how, when, where,
or with whom an alleged conspiracy took place, see United States
v. Feola, 651 F. Supp. 1068, 1132-33 (S.D.N.Y. 1987), aff'd, 875
F.2d 857 (2d Cir. 1989), including, the substance of the
conversations or the details of agreements between or among co-
conspirators, see United States v. Kahaner, 203 F. Supp. 78, 84
(S.D.N.Y. 1962), aff'd, 317 F.2d 459 (2d Cir. 1963), the specific
role played by a defendant in a conspiracy, or the particular
acts the defendant is alleged to have participated in, had

                            53

knowledge of, or for which he is being held responsible, <u>see</u>
<u>United States v. Jones</u>, 85 CR 1075 (CSH), 1986 WL 275, at *2
(S.D.N.Y. May 28, 1986).

     B.   <u>The Defendants' Requests</u>

     Persico moves for a bill of particulars as to Count
One, Racketeering Acts One through Five and Twelve, as well as
Counts Four and Five.  With regard to Racketeering Acts One and
Two, while the defense is aware of the identity of the John Doe
and the separate nature of each of the loans, Persico asks that
the Court require the government to "identify specifically what
it is that these two acts charge and the distinction between the
two," as well as "any co-conspirators allegedly involved [and]
the extortionate means allegedly used to collect any debts."
Persico Br. at 40.

     With regard to Racketeering Act Three, Persico requests
that the government be required to specify its theory regarding
Michael Persico's alleged involvement in the Joseph Scopo murder
and/or murder conspiracy.  Persico Br. at 40.  However, Persico
acknowledges that through various disclosures, the government has
described in detail Persico's role in the Scopo homicide,
including that he arranged for the firearms to be used in the
murder and that he insisted that Guerra and others carry out the
murder prior to the release of his brother, Alphonse.  <u>Id.</u>

54

As to Racketeering Act Five, while Persico is aware of the identity of John Doe #2, he moves to require the government to provide the amounts that were advanced, the extortionate means used to collect the extensions advanced and whether any co-conspirators were allegedly involved in these crimes.  Id. at 41.

As to Racketeering Act Twelve of Count One and Counts Four and Five, while again the defendant is aware of the identity of John Doe #2 and various co-conspirators to the crime, he claims the government has not informed the defense of the nature of the commercial business, the manner in which Anthony Russo was induced to deliver the property at issue and the others involved.

Guerra moves for disclosure of the identities of his coconspirators in the Scopo and Devine murders, charged in Racketeering Acts Three and Four of Count One.  Guerra Br. at 5; McMahon Aff. ¶¶ 25-28.

C.   Analysis

In addition to the '10 S-4 Indictment, the government has provided ample particulars as to each of the crimes at issue in discovery and court filings, including during the course of extensive bail litigation and the materials submitted in support of the government's motion for an anonymous jury.  Therefore, the defendants' requests for particulars are without merit and should be denied in their entirety.

55

For example, with regard to Racketeering Acts One and Two of Count One, while Persico claims to need more particulars regarding the nature and extent of the extortion, in the same motion at pages 9-10, Persico described the nature and extent of the extortion, including the evidence supporting the crimes, in great detail. Persico detailed the loan documents related to one of the extortions, the identity of the witness who extended the loan and the consensual recordings during which the witness and Persico discussed the terms of the loan. The notion that the defendant requires additional information is thus belied by his own motion.

Similarly, with regard to Persico's claims as to Racketeering Act Twelve, baldly stating that the government's charge is "absurd" does not entitle the defendant to additional particulars, especially when the government has described the nature of the commercial business, his co-conspirators and the specific details of the extortion in prior filings. First, Persico is charged in this crime along with Anthony Preza. Second, in its anonymous jury filings, the government stated that "Preza and M. Persico precluded the cooperating witness from starting a business that would have competed with Preza's business." See 3/13/12 Govt. Reply in Supp. Anon. Jury Mot. at 8) (Docket Entry No. 394). Additionally, in the Affirmation

56

submitted in support of the government's motion for an anonymous jury, the government provided the following particulars:

> Between June 2007 and June 2009, PERSICO and PREZA conspired to extort, and extorted, John Doe #2 by preventing John Doe #2 from opening a competing valet business.  At that time, John Doe #2 and another individual approached PREZA to get his advice about opening a valet business.  When John Doe #2 arrived at his scheduled meeting with PREZA, PERSICO was present and together, PERSICO and PREZA induced John Doe #2 to refrain from opening the valet business by instilling in him a fear that if he operated that business, he or others would suffer physical and economic harm.

See 3/30/12 Aff. in Supp. Anon. Jury Mot. at 8) (Docket Entry No. 410).  Given the detailed nature of the government's disclosures to date regarding these charges, the defendant cannot meet his burden to show that additional information is "necessary to understand the charges."  The same reasoning applies to the defendant's request for particulars with regard to the defendant's involvement in the Scopo homicide.  Id. at 4 ("PERSICO provided guidance to Guerra, CW-1 and others regarding the murder . . . .")

With regard to Racketeering Act Five, the '10 S-4 Indictment provides the defendant with sufficient particulars as to the charged crime, including the date range for the conduct and the identity of the victim.  The defendant has not provided any support for his claim that the law requires additional information to be disclosed.

57

Finally, Guerra moves for the government to identify the defendant's co-conspirators in the Scopo and Devine homicides.  The government, however, is not required to release the names of unindicted co-conspirators when it has otherwise provided sufficient disclosures regarding the nature of the charges.  Both the Second Circuit and district courts within this circuit have denied requests similar to Guerra's.  See Torres, 901 F.2d at 233-34; United States v. Richards, 94 F. Supp. 2d 304, 316 (E.D.N.Y. 2000); United States v. Polanco, 96 CR 229, 1997 WL 27141 (E.D.N.Y. Jan. 21, 1997); United States v. Larracuente, 740 F. Supp. 160, 163 (E.D.N.Y. 1990).

In Torres, the Second Circuit denied a request for the disclosure of co-conspirators' identities, holding that the indictment sufficiently advised the defendant of the charged crimes and that the government had provided "a wealth of evidentiary detail" from the items disclosed in discovery.  Torres, 901 F.2d at 234.  The Second Circuit concluded as follows: "So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion."  Id. (internal quotation marks omitted).  See also United States v. Gotti, 784 F. Supp. 1013, 1018 (E.D.N.Y. 1992) (denying disclosure of co-conspirators

in organized crime racketeering case); <u>United States v. Gotti</u>, 02 CR 743, 2004 WL 32858 (S.D.N.Y. Jan. 6, 2004) (same).

Additionally, the defendant's own filing demonstrates that he has ample evidence of the charged crimes, including the identities of potential co-conspirators. <u>See</u>, <u>e.g.</u>, Guerra's Br. at 4 (describing Russo's alleged information regarding the Scopo homicide as including Pappa, Sparacino and Guerra and comparing it to evidence presented at the Pappa trial).

For the foregoing reasons, the government respectfully submits that the defendants' motions for particulars should be denied in their entirety.

VII. <u>The Defendants' Motion for Additional Discovery is Moot</u>

The defendants also moved for the production of a number of discovery items, including:

- The NYPD homicide files related to the Devine and Scopo murders; and
- Bureau of Prisons records for Alphonse Persico, Joseph Monteleone, Sr., Joseph Russo and Chucky Russo.

The government has since provided the defendants with copies of the remaining materials in its possession from the NYPD homicide files related to the murders of Michael Devine and Joseph Scopo, as well as the requested Bureau of Prisons'

59

records.[17]  Therefore, the defendants' motion for discovery is
moot and should be denied.

VIII.     The Defendants' Remaining Requests

          In Guerra's motion, Guerra moves the Court to order the
government to produce Brady and Giglio material thirty days prior
to trial.  While the government has complied with its Brady
obligations to date and will continue to do so, the government's
obligation is to produce these materials in time for their
effective use at trial, and it will do so in ample time.  See
United States v. Coppa, 267 F.3d 132, 143-45 (2d Cir. 2001)
(finding district court exceeded its authority when it ordered
government to disclose all impeachment evidence immediately,
pursuant to criminal defendants' request for such, without regard
to its materiality and far in advance of trial); see also United
States v. Carrington, 2002 WL 31496199, at *3 (S.D.N.Y. Nov. 7,
2008) (finding that the government has no obligation to provide
either Brady-type exculpatory evidence or Giglio-type impeachment
evidence immediately upon demand).

          With regard to the balance of Guerra's requests, the
government has reached an agreement with defense counsel, through

_____

     [17]  The government provided the homicide files in an
abundance of caution, pursuant to its Brady and Giglio
obligations, not pursuant to Rule 16.  Additionally, with regard
to Persico's motion for Bureau of Prisons records, the government
notes that such records are equally available to the defendants
pursuant to a Rule 17(c) subpoena, should they believe that such
materials are relevant.

Persico, Jr.'s counsel Elizabeth Macedonio, to the following
schedule:

- Trial Exhibits: The government will provide the
  defendants with copies of its case-in-chief exhibits on
  or about two weeks prior to trial, with leave to add or
  amend exhibits as needed.  With regard to transcripts
  of recordings the government intends to introduce at
  trial, the government will immediately begin producing
  draft transcripts as they become available, pursuant to
  a draft transcript stipulation.

- Section 3500 Material: The government will begin
  production of Section 3500 material six weeks prior to
  trial, which will include Giglio information for its
  witnesses.

- Rule 404(b) Notice: The government intends to give
  notice of other acts evidence pursuant to Federal Rule
  of Evidence 404(b) on or about 30 days prior to trial.

61

<u>CONCLUSION</u>

For the foregoing reasons, the defendants's motions should be dismissed or denied in their entirety.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

Nicole Argentieri
Rachel Nash
Allon Lifshitz
Assistant U.S. Attorneys
     (Of Counsel)