EG:RJN/MNA/AL
F.#2010R00195

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

FRANCIS GUERRA,
    also known as "BF,"
MICHAEL J. PERSICO, and
THEODORE N. PERSICO, JR.,
    also known as "Skinny" and
    and "Teddy,"

        Defendants.

- - - - - - - - - - - - - - - -X

Cr. No. <u>10-147 (S-4)(SLT)</u>

THE GOVERNMENT'S OPPOSITION TO THE
<u>DEFENDANT MICHAEL PERSICO'S MOTION TO SUPPRESS</u>

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

NICOLE ARGENTIERI
RACHEL NASH
ALLON LIFSHITZ
Assistant United States Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The defendant Michael Persico ("Persico") moves to suppress evidence seized from Romantique Limousine pursuant to a search warrant in February 1991.   For the reasons set forth below, the government respectfully submits that the defendant's motion to suppress should be denied.

I.   Factual Background

A.   The Search Warrant Affidavit

On February 7, 1991, the Honorable A. Simon Chrein authorized a search warrant for the offices of Romantique Limousines, Inc., located on the first floor and basement level of 6713-6717 11th Avenue, Brooklyn, New York.  The warrant was based on an affidavit by an agent of the Federal Bureau of Investigation ("Affidavit" and "Aff."), attached as Exhibit 1, describing a scheme in which Persico concealed personal income and improved the financial records of Romantique Limousine ("Romantique").  Aff. ¶ 2.  Pursuant to that scheme, Persico extended a loan to a cooperating witness ("CW1"), who repaid the interest on the loan to Romantique.  Aff. ¶ 2, 4-6.  Persico and at least one co-conspirator, a Romantique employee, provided CW1 with fictitious Romantique bills in order to facilitate the scheme.  Aff. ¶ 5-9.   This loan is currently the basis for Racketeering Act One in the above-captioned superseding indictment because, in addition to helping to promote the scheme

1

described in the Affidavit, CW1 feared that his safety was at risk if he failed to repay the loan.

As set forth in the Affidavit, CW1 provided examples of fake Romantique bills (Aff. ¶ 5) as well as real Romantique bills (Aff. ¶ 6) for services actually rendered by Romantique to CW1. CW1 also consensually recorded conversations with Persico and others.  Aff. ¶¶ 3, 9.  The Affidavit describes a September 26, 1990 consensually recorded conversation in which one of Persico's co-conspirators discussed the amount of interest owed by CW1 and advised that CW1 would receive a bill for that amount.  Aff. ¶ 9. Indeed, CW1 subsequently received a bill for that amount, which he provided to the FBI.

B.   <u>The Search</u>

The search was executed on February 7, 1991.  As permitted by the warrant, agents searched the Romantique offices for any records relating to CW1.  They seized financial records including a ledger, billing invoices, receipts and deposit slips. They also seized a gun and ammunition from the desk drawer of the Romantique employee who, as described above, was one of Persico's co-conspirators in the scheme.

II.   The Evidence Was Properly Seized

    A.   The Affidavit Submitted in Support of the Search
         Warrant Establishes Probable Cause to Search

        1.   Legal Standard

        Presented with a warrant application, courts apply a

"totality of the circumstances" test:

> The task of the issuing magistrate is simply
> to make a practical, common-sense decision
> whether, given all the circumstances set
> forth in the affidavit before him, including
> the 'veracity' and 'basis of knowledge of
> persons supplying hearsay information, there
> is a fair probability that contraband or
> evidence of a crime will be found in a
> particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983) (citation omitted).

It is well established that "only the probability, and not a

prima facie showing, of criminal activity is the standard of

probable cause." United States v. Martin, 426 F.3d 68, 74 (2d

Cir. 2005) (quoting Gates, 426 U.S. at 235)). Moreover, "[a]

reviewing court must accord substantial deference to the finding

of an issuing judicial officer that probable cause exists."

United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993). "In

order to encourage the use of warrants, reviewing courts should

read the affidavit in support of the warrant in a common-sense

and realistic fashion," United States v. Evans, 2008 WL 1858897,

at *3 (D. Vt. Apr. 24, 2008) (citing United States v. Ventresca,

380 U.S. 102, 108 (1965)), and "[c]lose cases should be resolved

3

by upholding the warrant," id. (citing United States v.
Jackstadt, 617 F.2d 12, 14 (2d Cir. 1980)).

When an affidavit is based on information provided by a
confidential informant or cooperating witness, the informant's
veracity, reliability and basis for knowledge are, of course,
relevant to the probable cause determination, but

> these elements should [not] be understood as
> entirely separate and independent
> requirements to be rigidly exacted in every
> case. . . .Rather . . . .they should be
> understood simply as closely intertwined
> issues that may usefully illuminate the
> commonsense, practical question whether there
> is "probable cause" to believe that
> contraband or evidence is located in a
> particular place.

Illinois v. Gates, 462 U.S. at 230.

"Where the informant is in fact a participant in the
very crime at issue," it is not necessary to establish the
informant's past reliability.  United States v. Rueda, 549 F.2d
865, 869 (2d Cir. 1977); see also United States v. Burke, 517
F.2d 377, 380-81 (2d Cir. 1975) (noting that the requirement of
establishing prior reliability of corroboration is addressed to
the "particular problem of professional informants").

For example, in United States v. Steppello, 664 F.3d
359 (2d Cir. 2011), the Second Circuit recently rejected an
argument similar to the one Persico raises.  In that case, the
district court determined that there was no probable cause to
arrest because the police relied upon partially corroborated

4

information provided by a confidential informant with no history
of reliability.  The Circuit held that the district court erred
in discounting information provided the witness, explaining:

> [the witness] was a participant in the crime
> at issue; he gave the information to officers
> in person after they executed a valid search
> warrant at his residence; and at the time,
> [the witness] was motivated to be truthful to
> receive leniency.  Those circumstances
> suggest reliability.

Id. at 366.  Similarly, in United States v. Reed, 409 Fed. Appx.
471, 473, 2011 WL 454708 (2d Cir. Feb. 10, 2011), the Circuit
Court rejected the defendant's contention that an affidavit in
support of a warrant to search his residence should have included
information on the cooperating witness's prior instances of
reliability.  The court observed, "the agent's affidavit
explicitly described the informant as a 'cooperating witness' who
was referred to the agent by an Assistant United States Attorney
and spoke to the government under a 'proffer agreement.'  The
affidavit thus provided the magistrate with all the information
needed to evaluate the informant's credibility."  Id.

    2.    The Information Contained in The Affidavit Was
          Reliable

    Persico argues that the Affidavit is insufficient
because it failed to provide sufficient information to permit the
magistrate judge to accurately assess the reliability of CW1's
information.  That is not the case.  Rather, the Affidavit sets
forth specific examples of corroborative evidence that the agent

5

collected.  For example, CW1 provided to the FBI the fraudulent Romantique bills involved in the scheme (Aff. ¶ 5), the cancelled checks he wrote to Romantique representing the interest payments on the loan (Aff. ¶ 11), as well as the legitimate Romantique invoices, which, as set forth in the Affidavit, differed from the fraudulent bills beacuse they were addressed to CW1 personally, rather than to his company.  Aff. ¶ 6.  The agent also described the September 26, 1990 call during which Persico's co-conspirator advised CW1 of the amount of money he owed in interest payments. Aff. ¶ 9.

Persico complains that CW1 is not identified explicitly in the Affidavit as a cooperating witness and that the Affidavit does not describe the fraudulent activity to which CW1 would ultimately pled guilty.  However, it is clear from the Affidavit that CW1 was a knowing participant in Persico's fraudulent scheme to conceal income and improve the appearance of Romantique's financial records.  Aff. ¶¶ 2, 8.  Moreover, the Affidavit notes the agent's belief that Persico suspected CW1 had become a cooperating witness.  Aff. ¶¶ 10, 12.  These descriptions, along with the fact that CW1 was making consensual recordings, makes apparent that he was cooperating with the government.  This information regarding the source of the information contained in the Affidavit, together with the corroborative evidence the agent

set forth, provided the magistrate judge with more than adequate information for a finding of probable cause.

B.   A *Franks* Hearing Is Not Warranted

    1.   Legal Standard For Suppression Under *Franks v. Delaware*

In Franks v. Delaware, 438 U.S. 152 (1978), the Supreme Court authorized suppression of evidence obtained pursuant to a warrant only in an extremely narrow category of cases.  The Court found that because the constitutional Fourth Amendment Warrant Clause requires a factual showing of probable cause, "the obvious assumption is that there will be a truthful showing."  Id. at 164.  The Court, however, cautioned that "truthful" does not mean that "every fact recited in the warrant affidavit is correct." Id. at 165.  Rather, the Court recognized that probable cause may be founded upon "information within the affiant's own knowledge that sometimes must be garnered hastily.  But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."  Id. The Court established a two-part test to determine whether an evidentiary hearing is necessary.  First, "there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."  Id. at 171.  Secondly, even if these requirements are met,

7

> if, when material that is the subject of the
> alleged falsity or reckless disregard is set
> to one side, there remains sufficient content
> in the warrant affidavit to support a finding
> of probable cause, no hearing is required.

Id. at 171-172.

Since Franks, courts have interpreted very narrowly the first prong of the Franks test, i.e., whether the affidavit at issue contains "deliberate falsehood or reckless disregard for the truth."  For example, in United States v. Fermin, the Second Circuit found no "intentional misleading" of the authorizing judge, despite the fact that the supporting affidavit that relied largely on information from a confidential informant failed to mention, among other things, that the informant had stolen a gun from the office of a federal prosecutor.  32 F.2d 674, 676 (2d Cir. 1994).  Furthermore, the burden of proof in showing deliberate falsehood or reckless disregard for the truth rests squarely with the defendant, and any such allegations must make a "substantial preliminary showing" that is "accompanied by an offer of proof. . . .  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence explained."  United States v. Labate, No. 00 Cr. 632 (WHP), 2001 WL 533714, at *17 (S.D.N.Y. May 18, 2001) (quoting Franks, 438 U.S. at 171); see also, Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991); United States v. Levasseur, 816 F.2d 37 (2d Cir. 1987).

2.    The Affidavit Does Not Demonstrate Deliberate
Falsehood Or Reckless Disregard For The Truth

Persico's argument that the agent made false statements regarding the information provided by CW1 has no merit.  First, Persico argues that the agent falsely stated that CW1's representation that other individuals also made loan payments through fake Romantique bills was corroborated by consensual recordings.  This allegation distorts the information the agent set forth in the Affidavit.  The agent did not aver that this particular piece of information was the basis of a consensual recording.  Rather, the agent stated more generally that CW1's information had been corroborated by consensual recordings, as indeed it was.  For example, as set forth above, on September 26, 1990, CW1 recorded a telephone conversation with Persico's co-conspirator in which the bills and loan payments were discussed. A copy of the recorded conversation and a transcript of that recorded conversation are attached as Exhibits 2 and 2T.   Such corroboration is relevant to assessing the reliability of other information provided by CW1 that may not have been captured in the consensual recordings.

Persico further asserts that the agent knew CW1's information to be false because Persico describes Romantique as entirely legitimate.  This claim is also incorrect.  First, Persico's characterization of the business as legitimate simply reflects the fact that it provides a legitimate service, as

9

compared to other entirely criminal operations.  Second, during a recorded conversation on November 20, 1990, Persico acknowledged that the loan to Geller was illegal.  While he first states that Romantique is a legitimate business - and the Affidavit explicitly states that Romantique is a limousine-for-hire service (Aff. ¶ 1) - Persico then stated, "it was never being done down there [referring to a different business] like the little thing that I'm doin' here like the $16,000 a year they would a made it like that's what we were doin'.  I'm not tryin' to say we're [UI] even though we did it as a pretty short thing yeah [UI] it's illegal."  A copy of the pertinent section of the conversation is attached as Exhibit 3 and the transcript as Exhibit 3T.

Finally, Persico alleges that the agent falsely stated his belief that Persico had been alerted to the possibility that CW1 was cooperating with the government.  In support of his argument, Persico argues that the agent's belief was illogical because Persico had been present for a conversation in which another Colombo family associate, John Orena, discussed vig payments owed by CW1 on a loan Orena extended to him.  However, Persico was not involved in the extortionate loan extended and collected by Orena.  Thus, Persico's presence during this conversation does not negate the possibility that he suspected CW1 of cooperating.  Rather, the caution Persico used in discussing his own transactions with CW1, together with the

10

information that one of CW1's employees inquired about the
possibility of CW1's potential cooperation (Aff. ¶¶ 10, 12)
supports the agent's belief.

    C.   <u>The Warrant Was Appropriate in Scope</u>

        1.   <u>Legal Standard</u>

        To meet the particularity requirement of the Fourth
Amendment, a warrant must be "sufficiently specific to permit the
rational exercise of judgment [by the executing officers] in
selecting what items to seize." <u>United States v. LaChance</u>, 788
F.2d 856, 874 (2d Cir. 1986) (internal quotations omitted); <u>see
also</u> <u>United States v. Young</u>, 745 F.2d 733, 759 (2d Cir. 1984)
(ambiguity tolerated where officers "have done the best that
could reasonably be expected under the circumstances, have
acquired all the descriptive facts which a reasonable
investigation could be expected to cover, and have insured that
all those facts were included in the warrant"). <u>See also</u> <u>United
States v. George</u>, 975 F.2d 72, 75 (2d Cir. 1992); <u>United States
v. Regan</u>, 706 F. Supp. 1102, 1110 (S.D.N.Y.1989). Moreover, the
fact that the warrant includes a broad array of items does not
"prove that the warrant fails to meet this requirement of
particularity." <u>United States v. Sugar</u>, 606 F. Supp. 1134, 1151
(S.D.N.Y. 1985); <u>United States v. Dinero Express</u>, No. 99 CR 975
(SWK) 2000 WL 254012, at *8 (S.D.N.Y. March 6, 2000) ("[T]he
validity of a warrant is not affected by the fact that a vast

amount of material falls within its scope.")

       Where, as here, the scope of the warrant is challenged as overly broad, "'the issue is whether there exists probable cause to support the breadth of the search that was authorized.'" Dinero Express, 2000 WL 254012, at * 9 (quoting United States v. Wapnick, No. 92 Cr. 419, 1993 WL 86480, at *5 (E.D.N.Y. March 16, 1993), aff'd, 60 F.3d 948 (2d Cir. 1995), cert. denied, 517 U.S. 1187 (1996)).  As set forth above, to determine whether the seizure of the items listed in the warrant is supported by probable cause, the Court should examine the totality of the circumstances (Gates, 462 U.S. at 238) and should "accord substantial deference to the finding of an issuing judicial officer that probable cause exists."  Wagner, 989 F.2d at 72.

       2.   The Scope of the Search Warrant Was Supported by Probable Cause

       The warrant authorized the seizure of "cash receipt ledgers, deposit tickets, invoices reflecting billing for limousine services, customer account records relating to CW1, KBJS Investors and CW1 and Company, dispatcher logs or other records reflecting limousine runs, computer and computer disks containing the records listed above."  Persico argues that the search warrant is overly broad because it permitted the seizure of cash ledgers, whereas CW1's payments to Romantique were made by check.  This argument takes an unreasonably narrow view of the appropriate scope of the warrant.  First, the agent specifically

12

set forth probable cause to seize items that would "enable investigators to differentiate 'legitimate' invoices of Romantique from fraudulent ones." Aff. ¶ 14.  Second, one purpose of the scheme was to divert income from Persico to the books of Romantique.  Accordingly, Romantique ledgers, whether they contained records of cash or check payments, helped to establish the financial worth of the company and thus were an important part of the fraudulent scheme described.  Aff. ¶ 2. Third, given that the search warrant alleges that Persico used Romantique to conceal personal income, there was probable cause to seize items that would enable agents to determine whether money received, whether by cash or check, was being recorded properly.  Finally, unless Romantique maintained separate systems for recording cash receipts and checks, it is entirely possible (and indeed the case), that any income earned (checks or cash) would be recorded in a general cash receipts journal.  For these reasons, the scope of the warrant was proper and not over-broad.

> D.    The Search Did Not Exceed the Scope of the Warrant

Persico objects that the agents "ransacked the entire premises."  However, the agents were specifically permitted to search the entire premises of the first floor and basement of the Romantique offices.  Persico further makes the baseless assertion that the agents should have stopped searching as soon as they found records specifically identified as related to CW1 or his

13

company. Yet, the Affidavit never suggested that CW1's payments
or bills were separated out from the financial statements and
records of the company as a whole. To the contrary, the crux of
the scheme was to make payments to Romantique, rather than to
Persico personally. Thus, it was reasonable for the agents to
seize records that might incorporate those payments from CW1,
rather than confining themselves to documents specifically
labeled with CW's name or company. Put another way, there was
probable cause to believe that the company's financial ledgers
would include payments made by CW1 and his company, and these
items were properly seized.

Persico's objection to the seizure of the gun from one
of the desks in Romantique is also without merit. Agents
executing the search warrant were entitled to seize anything in
plain view for which there was probable cause to believe was
associated with criminal activity, as long as they were lawfully
searching the area in which in the item was observed. Payton v.
New York, 445 U.S. 573, 587 (1980). Under this plain view
doctrine, "if police are lawfully in a position from which they
view an object, if its incriminating character is immediately
apparent, and if officers have a lawful right of access to the
object, they may seize it without a warrant." United States v.
Graziano, 558 F. Supp. 2d 304, 311 (E.D.N.Y. 2008) (upholding
seizure of weapons that were found in the defendant's bedroom

14

where law enforcement agents were permitted to search there for items set forth in the warrant) quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)).  The desk, which belonged to one of Persico's coconspirators, was properly searched pursuant to the search warrant.  Once the agents found the gun, for which the coconspirator acknowledged he had no license, it was proper to seize it.

E.   The Agents Acted in Good Faith

Because the warrant was supported by probable cause and the agents acted within the scope of the warrant, the Court need not explore the good faith exception pursuant to United States v. Leon, 468 U.S. 897, 920 (1984).  However, to the extent the Court does have concerns regarding the propriety of the warrant, the agents unquestionably acted in good faith reliance on the search warrant.  Thus, should the Court find the warrant invalid, it nonetheless should reject the defendant's motion because the officers "acting with objective good faith . . . obtained a search warrant from a judge or magistrate and acted within its scope."  Leon, 468 U.S. at 920.  Based on the facts of the investigation known to the executing agents, no "reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization."  United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992).  The agents were thus

15

entitled to rely in good faith on the issuance

of the warrant.

III. <u>Conclusion</u>

For the reasons set forth above, the government

respectfully submits that the defendant's motion to suppress and

for a <u>Franks</u> hearing should be denied.


                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York


Nicole Argentieri
Rachel Nash
Allon Lifshitz
Assistant U.S. Attorneys
      (Of Counsel)

16