

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:NMA/RMN/AL

*271 Cadman Plaza East*

*Brooklyn, New York  11201*

May 28, 2012

**By ECF & Hand Delivery**

The Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Francis Guerra, et al.
          Criminal Docket No. 10-0147 (S-4)(SLT)

Dear Judge Townes:

      The government respectfully submits this reply in
further support of its motions in limine to admit certain
evidence, in order to address certain of the arguments raised by
the defendants Francis Guerra ("Guerra"), Theodore Persico, Jr.,
("Persico, Jr.") and Michael Persico ("Persico") in their various
opposition briefs and letters.

      To summarize, the government seeks to admit evidence
relating to the defendants' involvement in (1) the Colombo War;
(2) the use and sanctioning of murder and violence as a means to
promote the interests of the enterprise and its members; (3) the
collection of loanshark, extortion and tribute payments; and
(4) the resolution of Colombo family issues and disputes.  In
addition, the government seeks to introduce: (5) October 20, 1993
911 calls related to the Scopo murder, and (6) the co-conspirator
statements of John "Sonny" Franzese, Ralph DeLeo and Edward
Garofalo.

I.    The Evidence The Government Seeks to Admit is Not Unduly
     Prejudicial

      Each of the defendants challenges the evidence the
government seeks to admit pursuant to its May 8, 2012 Motion
("Gov. 5.8.12 Mot.") as unduly prejudicial.  This argument is
without merit.  Below, the government will address the individual
objections set forth by the defendants with respect to
particularized evidence the government seeks to admit.  However,
as a general matter, the evidence set forth in the Government's
May 8, 2012 motion is only prejudicial in that it is powerful

evidence of the crime of racketeering conspiracy charged in Count One.  For this reason, no improper prejudice will result from the admission of this evidence.

"Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. " See United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980). Here, while the evidence the government seeks to admit does not necessarily relate directly to each of the enumerated predicate acts, the evidence does prove essential elements of the charged racketeering conspiracy, such as the defendants' agreement to participate in an enterprise, the nature of that enterprise, their agreement to use particular means and methods to further the interests of that enterprise, and the pattern of racketeering activity in which the defendants agreed to engage.  With respect to proving the existence of the enterprise and the pattern of racketeering acts through which the members conducted the affairs of the enterprise, the government is not limited to the predicate acts set forth in the indictment. Rather, while the government is required to prove the defendants agreed that two or more participants in the enterprise would commit two or more predicate acts, the government is not required to set forth every act comprising the pattern of racketeering in which they agreed to engage.  As the Second Circuit has explained,

> To understand the scope of the jointly undertaken scheme, one must also consider the enterprise that the conspirators agreed to conduct through a pattern of racketeering. In short, a RICO conspiracy is never simply an agreement to commit specified predicate acts that allegedly form a pattern of racketeering.  Nor is it merely an agreement to join in a particular enterprise.  Rather, it is an agreement to conduct or to participate in the conduct of a charged enterprise's affairs through a pattern of racketeering.

United States v. Pizzonia, 577 F.3d 455, 463-64 (2d Cir. 2009) (citations omitted); United States v. Basciano, 599 F.3d 184, 205 (2d Cir. 2010)("To be sure, a defendant must be found to have committed at least two predicate acts to be guilty of substantive racketeering.  Nevertheless, it is the pattern of activity, not the predicates, that is punished by a racketeering conviction.") (citations omitted); United States v. Applins, 637 F. 3d 59, 81 (2d Cir. 2011); see also, United States v. Glecier, 923 F. 2d

496, 501 (7th Cir. 1991); United States v. Bronson, No. 05-CR-714 (NGG), 2007 WL 2455138, at * 3 (E.D.N.Y. Aug. 23, 2007) (explaining that the government is not required to set forth each and every act the defendants agreed to commit as part of the racketeering conspiracy).

Moreover, the evidence the government seeks to admit involves conduct that is similar in nature to the enumerated predicate acts, including murder, extortion, obstruction, and loansharking.  Therefore, nothing in the evidence the government seeks to introduce is more inflammatory or sensational that the actual charges the defendants face.  See United States v. Benton, 852 F.2d 1456, 1467-68 (6th Cir. 1988)(holding that evidence of prior extortions not unduly prejudicial); United States v. Schweihs, 971 F.2d 1302, 1313 (7th Cir. 1992) (the probative value of prior extortions was not substantially outweighed by the danger of unfair prejudice where the conduct showed the intent to threaten and instill fear).

II.   Evidence Relating to the Colombo Family War

The defendants object to evidence the government intends to introduce regarding the activities of the defendants and their co-conspirators during the Colombo War.  This evidence is integral to proving the racketeering conspiracy and the means used to further the control exerted by individuals such as Persico, Jr., and Persico over the criminal enterprise.  Thus, the defendant's objections are without merit.

   A.    Patrick Bombino's Recorded Statements Regarding the
         Colombo War

As set forth in the government's May 8, 20120 motion, Patrick Bombino ("P. Bombino") engages in discussions with a cooperating witness (identified in the government's motion as "CW5")[1] and co-conspirator James Bombino ("J. Bombino") regarding the Colombo War.  For example, during a recorded conversation with CW5 on January 22, 2009, Patrick Bombino explained that Edward Garofalo had "done a couple of nice things during the war," that the Persicos consider that to be an honor, and that if

---

   [1]    In this letter, the government has identified the cooperating witnesses with the same numbers used in its May 8, 2012 motion.

3

Garofalo ever cooperated, Persico, Jr., would go to jail for the rest of his life.  Gov. 5.8.12 Mot. at 25.  Persico, Jr., and Persico object to this and other similar statements by P. Bombino.  Persico, Jr. 5.25.12 Br. at 7-10; Persico 5.25.12 Br. at 9-11.  In particular, Persico, Jr., objects that this statement is hearsay and unduly prejudicial.  Persico, Jr. 5.25.12 at 8.  That is not the case.  The evidence at trial will establish that P. Bombino was a co-conspirator in the charged racketeering enterprise.  For example, he was involved in the formation of All Around Trucking, which as discussed at length in the government's previous filings in this case, was operated by and for the benefit of the Colombo family.  Moreover, he was involved in the extortion of the owners of a furniture store, which is the subject of Racketeering Act 18 and Counts 15 - 17.  During several recorded conversations, P. Bombino gives advice and information to CW5 and to co-conspirator James Bombino, in furtherance of the racketeering conspiracy.

In essence, in the statement at issue, P. Bombino advised CW5 and J. Bombino about the Colombo War and the fact that individuals loyal to the Persico faction, individuals such as Edward Garofalo, were rewarded by the Persico faction for their loyalty.  He further advised that it is important for the Persicos to reward such loyalty in order to protect themselves from the possibility that people like Garofalo would cooperate with the government.  In another conversation, P. Bombino advised that Persico protected Thomas Petrizzo during the war, despite his allegiance to the Orena faction, because Persico married Petrizzo's daughter.  Far from "idle chatter," as Persico and Persico, Jr. characterize these statements, they are intended to educate CW5 and J. Bombino regarding the nature of the racketeering conspiracy charged in the indictment, as well as the methods and means that the Colombo family enterprise uses to advance its power and economic interests.  The statements therefore constitute admissible co-conspirator statements and direct evidence that tend to establish the existence of the enterprise, the means of the enterprise, and the Colombo War itself.  See United States v. Maldonado-Rivera, 922 F.2d 934, 959 (2d Cir. 1990) (the standard permits introduction of a coconspirator's statements "that provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy"); United States v. Rahme, 813 F.2d 31, 35 (2d Cir. 1987) (coconspirator statements may be found to be "in furtherance" of the conspiracy if they "prompt the listener

4

to respond in a way that facilitates the carrying out of criminal activity"); <u>United States v. Tarantino</u>, 846 F.2d 1384, 1412 (D.C. Cir. 1988) (noting that the standard also permits the introduction of any statement that "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy").  Accordingly, the statements comprise probative, admissible evidence of the crimes charged in the superseding indictment and should be admitted at trial.

  B. <u>Conspiracies to Commit Murder</u>

   The government also sought to introduce evidence of defendant Guerra's participation in, among other crimes, the conspiracy to murder "Wild Bill" Cutolo, the murder of John Sparacino and the conspiracy to murder the Clemenzas.  As set forth in the Government's May 8, 2012 Motion, these acts are probative of the charged racketeering enterprise, including specific charged crimes such as the conspiracy to murder and murder of Joseph Scopo.[2]  Defense counsel fails to address these arguments, arguing baldly that these acts would merely force the jury to conclude the defendant had a propensity for violence.  However, as the government has previously demonstrated, these acts are critical evidence of the relationship of trust between these individuals and necessary to the government's proof the charged crimes.

   For example, Guerra's agreement to murder Benny Geritano, along with two fellow participants in the Scopo murder - John Pappa and CW1, shortly after the murder of Scopo, is

---

[2]  Oddly, the defendant claims that the "sheer volume" of uncharged crimes alleged, filed 30 days before trial, mandates its denial.  However, the government's disclosure 30 days before trial should be no surprise to defense counsel, since that is explicitly the schedule he demanded in the defendant's pretrial motion.  <u>See</u> Guerra's Memorandum of Law in Support of Omnibus Relief, at 10 (Docket Entry No. 402).  Moreover, the materials provided in support of the charged crimes are the same materials that support the uncharged crimes, which undermines the defendant's argument that it is "unconscionable" to ask counsel to investigate these uncharged acts.  <u>See</u> Guerra's Opp. filed 5/24/12, at 2 (Docket Entry No. 483).

strongly probative of his relationship with CW1 and John Pappa at the time.

Similarly, Guerra's involvement in helping Pappa dispose of the body of John Sparacino, another participant in the Scopo murder, is also probative of Guerra's involvement in the Colombo War and in particular, Scopo's murder.  The evidence at trial is expected to establish that the participants in the Scopo murder were upset because Sparacino had fled the murder scene and subsequently attempted to take credit for murdering Scopo and helping to end the Colombo War.  Sparacino's murder punished him for this conduct and ensured that he could not deprive others of the credit they sought from the Colombo family for completing Scopo's murder.  Without evidence of these acts, the jurors would only be presented with a limited view of the circumstances surrounding the Scopo murder, which would appear misleading and stilted, placing the government at a disadvantage.  In contrast, given the nature of the charged crimes, introduction of such evidence would not be overly prejudicial to the defendant.

III. Use or Sanctioning of Murder or Violence

A.   Persico, Jr.'s Recorded Comments

Persico, Jr., objects to the introduction of his own recorded statements regarding the need to use violence.  In arguing that this evidence constitutes improper propensity evidence (Persico, Jr. 5.25.12 Br. at 17), he ignores the context in which his statements were made.  Persico, Jr., was talking to Colombo family associates, with whom he was engaged in a trucking business and to whom he would help arrange an extortionate extension of credit.  Persico, Jr.'s, comments were intended to ensure that these individuals were aware of the measures he was willing to use to protect his interests and the interests of the Colombo family.

B.   Joseph Lalima

Persico submits that the evidence regarding his involvement with Joseph Lalima is not sufficiently related to the racketeering conspiracy and that the evidence will result in an improper "trial within a trial."  Persico 5.25.12 Br. at 3-4. However, Persico's conduct with respect to Lalima and Lalima's business is part of the pattern of racketeering alleged and is highly probative of the means he and other members and associates

of the Colombo family use to promote their interests. As set forth in the government's 5.8.12 motion, Persico was angry because Lalima had failed to pay Persico the proceeds Persico believed he was due. Gov. 5.8.12 Br. at 19. Persico then used his Colombo family connections - Theodore Persico, Sr., and Frank Sparaco, a trusted associate, - to intimidate Lalima. CW2 is expected to testify that even this warning was insufficient, and that he never saw Lalima again. This evidence does not necessitate a "trial within a trial." Rather, the evidence establishes Persico's involvement in punishing an individual who disregarded the rules of the enterprise. It further establishes CW2's state of mind with respect to the possible consequences he could suffer if he were to break the rules.

### C. Bruce Black

Similarly, Persico argues that evidence of his involvement in a conspiracy to murder Black is not sufficiently connected to the enterprise and the racketeering conspiracy. Persico 5.25.12 Br. at 6. Yet, Persico agreed to assist a Colombo family associate by using his organized crime connections to have Black killed. Even if, as Persico suggested, the discussions merely reflect a willingness to discuss murder, as opposed to an intent to actually use it, such willingness is probative of the means employed by the members of the enterprise to further their financial well-being. Morever, the mere fact that Persico indicated he had sufficient connections to arrange for Black's murder, even if he did not intend to use them, is probative of his position in the enterprise.[3]

### D. Steven Piazza

Finally, Persico objects to the admission of Persico's comment to CW2 regarding the death of Piazza. According to Persico, he was murdered because of his infidelity to Persico's sister. In order to establish that the defendants agreed to participate in a criminal enterprise, the government is required to establish the rules that members and associates agreed to

---

[3] The conspiracy to murder Bruce Black also constitutes Giglio evidence relating to CW2. Should the Court preclude the government from eliciting the information from CW2, the government respectfully submits that the defendants should not be permitted to cross-examine CW2 about his role in the plot.

follow, and the potential punishment for violating these rules. Persico's statement about Piazza reflects his intimate familiarity with these rules and potential punishments.

E.    Conspiracy to Murder Joel Cacace

CW4 is expected to testify about his relationship of trust with Persico, Jr., and members of Persico, Jr.'s crew, including co-defendant Guerra.  This relationship is important to the government's evidence of Guerra's participation in the murder of Michael Devine because Guerra admitted his participation in the Devine murder to CW4 on multiple occasions, even asking for assistance before the murder was carried out.  CW4 will testify that the trust he shared with Persico, Jr., and Guerra developed over the course of their criminal association; first, as coconspirators in a lucrative narcotics trafficking business, and later as an associate assigned to Persico, Jr.'s crew.  Indeed, the government respectfully submits that the fact that Persico, Jr., trusted CW4 to protect Persico, Jr., and his close friend and criminal associate Frank Smith by murdering Joel Cacace, a powerful member of the Colombo family, if necessary, is powerful evidence of the relationship between these men, which will no doubt be attacked by defense counsel at trial, and is also critical background to Guerra's admissions.  It is also evidence of the charged racketeering conspiracy and the defendants' respective positions in that conspiracy.[4]

---

[4]   For the same reasons, evidence of Persico, Jr., and Guerra's participation in narcotics trafficking, along with CW4, is important evidence for the government to adduce at trial because it bears directly upon the basis for the witness's criminal relationship with Persico, Jr., and Guerra.  While admittedly temporally removed from this trial, the cocaine trafficking at issue is not remote in time to the Devine murder or Guerra's admissions to CW-4 regarding the Devine murder.  If CW4 is not permitted to explain how he met Persico, Jr., and Guerra and the nature of their relationship in the late 1980s, his testimony regarding their association with the Colombo family and Guerra's participation in the 1992 murder of Michael Devine will be presented out of context, severely limiting its probative value.  Additionally, given the nature of the charged crimes against Guerra and Persico, Jr., which include witness tampering, murder and murder conspiracy, the defendants cannot seriously

F.    Murder of Steven Mancusi

        The government has also sought to introduce evidence of
Guerra's participation in the murder of Steven Mancusi.
Specifically, CW1 is expected to testify that Guerra admitted
that he killed Mancusi, along with Frank Sparaco, one of Guerra's
coconspirators in the murder of Michael Devine.  Guerra admitted
his participation in the Mancusi murder to CW1 in the context of
airing his suspicions that Sparaco was cooperating with the
government.  He advised CW1, in sum and substance, that he had
committed multiple murders with Sparaco, including Devine and
Mancusi.  This evidence of Guerra's participation in the Mancusi
murder is thus inextricably intertwined with Guerra's admission
regarding the charged Devine murder.  Requiring CW1 to excise
this part of his testimony from Guerra's admissions related to
the Devine murder would create an incomplete and inaccurate
portrait of Guerra's level of concern at the time regarding
Sparaco's cooperation and undermine CW1's credibility.
Additionally, Guerra's statements to CW1 about his concerns
related to Sparaco's cooperation are probative of their joint
participation in and loyalty to the racketeering enterprise.

IV.   Extortion Payments, Tributes and Loansharking

        Guerra, Persico and Persico, Jr. further object to
evidence of their involvement in collecting various payments,
including extortion payments, tribute payments and interest
payments, from Colombo family members and associates.  Guerra
5.24.12 Br. at 3; Persico, Jr. 5.25.12 Br. at 14-15; Persico
5.25.12 Br. at 11-13.  Testimony at trial will establish that
individuals involved in organized crime are expected to pay a
portion of the proceeds they earn from both criminal activities
and from the operation of real businesses to their superiors.
Testimony will also establish that interest payments on
extortionate loans is a basic form of revenue for the Colombo
family.  The evidence demonstrating that Persico and Persico, Jr.
were involved in these essential aspects of the charged
racketeering enterprise surely is not unduly prejudicial, but
rather, simply establishes their involvement in carrying out the
means and methods of the enterprise.

---

contend that this testimony will cause substantial prejudice to
either defendant.

V.    Evidence of Influence In the Colombo Family

        Persico, Jr., and Persico object to evidence of their
influence in the Colombo family.  For example, they object to
evidence regarding their involvement in mediating disputes and in
approving or seeking approval for certain criminal conduct such
as drug trafficking.  Persico, Jr. 5.25.12 Br. at 16; Persico
5.25.12 Br. at 12-13.  First, Persico argues that the evidence
regarding the dispute involving Anthony Preza's employee will be
based on hearsay testimony from CW1.  To the contrary, the
evidence will be based on co-conspirator statements made to CW1
regarding the dispute.  To the extent the defendant believes that
a sufficient evidentiary foundation has not been laid during
trial, he may object to the evidence at that time.

        Persico further objects that evidence of a second
dispute he mediated is not sufficiently linked to the enterprise.
This assertion has no merit.  Rather, the testimony of the
cooperating witness CW7 is expected to establish that Persico
became involved precisely because the son of a Colombo associate
with whom he had a close relationship was assaulted.  Persico,
though he spared CW7 because of Persico's personal relationship
with CW7's uncle, clearly communicated that another similar
transgression against the Colombo associate would not be
tolerated.[5]  Similarly, Persico's statement to a cooperating
witness previously identified as CW6, in which Persico considered
whether to approve CW6's request to engage in drug dealing, is
evidence of Persico's position of influence in the Colombo
family.

        Persico Jr.,'s arguments are no better.  He objects
that the evidence should not be admitted to address the potential
defense that Persico, Jr., was not involved in organized crime.
Persico, Jr. 5.25.12 at 16.  In the event such an argument is
presented, the evidence would be admissible for that purpose.
However, Persico, Jr., misses the crux of the government's
argument, which is that the resolution of crime family disputes
through sit-downs is an integral part of the racketeering
conspiracy because it prevents outside interference in the

---

        [5]  The government does not intend to introduce evidence of
the second organized crime dispute described in its Motion at
page 37 related to a sitdown over an alleged robbery.

10

affairs of the enterprise and permits the leaders of the
enterprise to maintain control over its members.

## VI.   The October 20, 1993 911 Calls

        Persico, Jr., concedes that the 911 calls placed after
the murder of Joseph Scopo are admissible as exceptions to the
rule against hearsay (Persico, Jr., 5.25.12 Br. at 19), but
argues that they are unduly prejudicial.  They are not.  The
calls are direct evidence of what occurred the night of Joseph
Scopo's murder, and the descriptions provided by the callers
corroborate the testimony of the cooperating witnesses.  Thus,
they are not cumulative of other evidence the government will
present, and do no more than tend "to prove the fact or issue
that justified [their] admission into evidence."  Figueroa, 618
F.2d at 943.  Any prejudice that results is not improper, but
rather, the prejudice that naturally must arise from the
presentation of evidence tending to prove the defendant committed
the crime charged.

## VII. Edward Garofalo's Co-Conspirator Statements

        With respect to the statements made by Edward Garofalo
regarding the assault of a truck driver, who Garofalo and
Persico, Jr., then intimidated through his employer, the
government relies on its May 9, 2012, explaining why these
statements are indeed co-conspirator statements and statements
against penal interest.  Here, the government addresses only the
defendant's contention that the beating had nothing to do to with
the racketeering conspiracy.  To the contrary, the evidence is
expected to establish that Garofalo stopped Persico, Jr., from
engaging in the fight in order to protect Persico, Jr., who was
on parole.  Thus, though the altercation arose spontaneously,
Garofalo's reaction, and the subsequent obstruction, were
connected to the enterprise.

## VIII.   John "Sonny" Franzese's Co-Conspirator Statements

        In a separate letter on May 25, 2012, Persico's counsel
declined to address these statements, arguing that she would need
a continuance to review the 3500 material for the cooperating
witness who recorded the statements.  This argument, and the
suggestion that the government has not complied with its
obligations pursuant to 18 U.S.C. § 3500 is without merit.  The
government provided the defense with the relevant recordings over

a year ago, in April of 2011.  Although the government does not intend to call Fatato as a witness, it has, in an abundance of caution, provided the defense with copies of his prior testimony in other cases and with the FBI reports relating to his cooperation and the information he has provided.  However, the government is not required to produce the other consensual recordings he made while cooperating with the government that have no relation to the subject matter of this case.  Indeed, the Second Circuit has explicitly found that the disclosure obligations of the Jencks Act do not extend to require production of notes or reports for non-testifying declarants whose co-conspirator statements the government intends to introduce into evidence at trial pursuant to Rule 801(d)(2)(E).  See United States v. Shyne, 617 F.3d 103, 106-08 (2d Cir. 2010) ("[b]y its own terms the Jencks Act applies to a 'witness' who 'has testified on direct examination.'"); see also United States v. Williams-Davis, 90 F.3d 490, 513 (D.C. Cir. 1996) (same).

IX.  Conclusion

     For the reasons set forth in the Government's Motions
dated May 8, 2012 and for the reasons set forth above, the
government should be permitted to introduce evidence regarding
the defendants' involvement in: (1) the Colombo War; (2) the use
and sanctioning of murder and violence as a means to promote the
interests of the enterprise and its members; (3) the collection
of loanshark, extortion and tribute payments; and (4) the
resolution of Colombo family issues and disputes.  In addition,
for the reasons set forth in the Government's Motion dated May 9,
2012 and the reasons set forth above, the government should be
permitted to introduce: (5) the 911 calls from October 20, 1993
and (6) the co-conspirator statements of John "Sonny" Franzese,
Ralph DeLeo and Edward Garofalo.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:   /s/
                          Nicole M. Argentieri
                          Rachel M. Nash
                          Allon Lifshitz
                          Assistant U.S. Attorneys


cc:  Defense Counsel (by ECF)

13